IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STACK TECK SYSTEMS, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 06-507 |
| DAVID BROWN, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS**

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

August 22, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii

NATURE AND STAGE OF PROCEEDINGS ..................................... 1

SUMMARY OF ARGUMENT ................................................. 2

STATEMENT OF FACTS .................................................. 3

ARGUMENT ............................................................ 6

I.    DELAWARE IS A FORUM NON CONVENIENS ............................. 6

CONCLUSION .......................................................... 11

## TABLE OF AUTHORITIES

*Cases*

Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc., 295 F. Supp. 2d 400 (D. Del. 2002) .......... 6, 7

Brown v. The Buschman Company, 2002 U.S. Dist. LEXIS 4087 (D. Del. 2002). .......... 8

Candlewood Timber Group, LLC v. Pan Am. Energy LLC, 2003 Del. Ch. LEXIS 118 (Del. Ch. 2003) .......... 8

Liggett Group, Inc. v. Affiliated FM Insurance Company, 788 A.2d 134 (Del. Super. 2001). .......... 8

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). .......... 6

Machtinger v. HOJ Industries Ltd. [1992] S.C.J. 41 .......... 9

McKinley v. BC Tel [2001] S.C.J. 40 .......... 9

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981). .......... 6

*Other authorities*

Employment Standards Act, 2000, S.O. 2000, C-41 (Can.). .......... 9

## **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff filed its Complaint in the Court of Chancery of the State of Delaware in and for New Castle County on July 25, 2006. Plaintiff alleges that Mr. Brown breached fiduciary duties owed to Stack Teck Holding. Plaintiff also seeks a declaratory judgment that Mr. Brown's termination was proper. The gravamen of Plaintiff's Complaint is the allegation that Mr. Brown issued bonus payments to employees, including himself, that were not known by the Plaintiff.

Plaintiff is a citizen of the State of Delaware, which is its place of incorporation. (Complaint ¶ 1). Defendant is a resident and citizen of Ontario, Canada.

On August 15, 2006, based on diversity of citizenship, Defendant removed the case from the Court of Chancery of the State of Delaware to this Court. (D.I. 1). An Answer to the Complaint in the state court was not filed.

On August 22, 2006, Defendant filed his Motion to Dismiss for Forum Non Conveniens. This is his Opening Brief in support of that motion.

1

## **STATEMENT OF FACTS**

### **THE PARTIES**

David Brown is a resident and citizen of Ontario, Canada. (Affidavit of David Brown, attached as Exhibit A and hereinafter referred to as "Affidavit" ¶ 1).

Stack Teck Systems, Inc. (the Plaintiff in this action; hereinafter "Stack Teck Holding") is a holding company, which is incorporated in Delaware. It has no offices. There are no individuals paid by Stack Teck Holding. (Affidavit ¶ 2).

There are two operating companies of Stack Teck Holding: Stack Teck Systems Limited (hereinafter Stack Teck Canada), a Canadian corporation, which is located at 1 Paget Road, Ontario, Canada; and Stack Teck Systems California (hereinafter "Stack Teck California), which is a Californian corporation, located at 20109 Paseo del Prado, Walnut, California. The two operating companies are engaged in the business of providing integrated plastic tooling solutions for the injection molding industry. (Affidavit ¶ 3).

Until July 19, 2006, David Brown was the Chief Executive Officer ("CEO) of Stack Teck Holding, President and CEO of Stack Teck Canada, and held the title of President of Stack Teck California. (Affidavit ¶ 4).

David Brown was employed by Stack Teck Canada, or its precursors, from 1979 until his termination on July 19, 2006. His salary and bonuses came directly from Stack Teck Canada. (Affidavit ¶ 5).

While an employee of Stack Teck Canada, David Brown had no communications or business activity in the State of Delaware. (Affidavit ¶ 6).

### **BONUS PLAN**

On September 21, 2004 the Board of Directors (hereinafter "the Board") for Stack Teck Holding unanimously approved the budget for 2005, which contained an incentive plan that included bonuses and commissions for employees that had been utilized for repeated years. The bonus plan had always been paid, even when the company was in default of its loan agreements, provided that the company hit its targets. As President and CEO of Stack Teck Canada, Mr. Brown was charged with administering the plan since its inception years prior. (Affidavit ¶ 7).

The bonus plan varied for different levels of employees, i.e., for senior management of Stack Teck Canada, a non-discretionary bonus, which was a predetermined percentage of base salary, would be received if Stack Teck Canada met its target, which for 2005 was $2.6 million EBITDA (Earnings Before Interest, Tax, Depreciation and Amortization). There would also be another non-discretionary bonus if both Stack Teck Canada and Stack Teck California met the corporate target of $4.9 million. In addition, there was a small discretionary bonus that could be earned, which was a portion of the base bonus. This formula was similar for employees of Stack Teck California, who had a target of $2.3 million. (Affidavit ¶ 8).

In March 2005, the bonus plans containing the specific formulas were distributed to the employees of Stack Teck Canada.. (Affidavit ¶ 9).

Each month, the Board would receive statements containing the actual administration expenses, as well as the accrued bonus payout for the end of the fiscal year. (Affidavit ¶ 10).

In the Fall of 2005, Annex Capital and Woodside Capital purchased Stack Teck Holding, Stack Teck Canada and Stack Teck California, and replaced the Board of Directors with Scott Schooley, Daphnee Firth, Alex Coleman, and Robert Fowler. In addition, David Brown remained on the Board. All of the Board meetings were held in Toronto, Canada or by

telephone. For many months prior to the purchase, both Annex and Woodside had also received the aforesaid monthly statements since they were the holders of the senior debt of the company. (Affidavit ¶ 11).

At the end of the 2005 fiscal year (November 30, 2005), it was learned that Stack Teck Canada had met and exceeded its $2.6 million target, with an EBIDTA of $3.4 million. Stack Teck California, however, failed to meet its target and had an EBITDA of negative $1.4 million. (Affidavit ¶ 12).

In accordance with the bonus plan, and consistent with the payment of the plan in prior years, approximately fifty employees of Stack Teck Canada, including David Brown, were distributed the bonus payments beginning in December 2005. The bonuses were paid by Stack Teck Canada from a Canadian bank account. The employees that received the bonuses work and reside in Canada. Documents relating to the bonuses are also in Canada. Since Stack Teck California failed to meet its target, no bonuses were paid to Stack Teck California employees. (Affidavit ¶ 13).

David Brown received a bonus of $105,000 Canadian Dollars (herinafter "CAD"). David Brown, however, had been holding a promissory note for $120,000 CAD for the company, which he received in 1996 for, inter alia, releasing his three percent equity interest in the company at the time of a merger in 1996. The promissory note was amended and restated in 1998 and matured in 2005. Consistent with a conversation in November 2005 that he had with Scott Schooley, and Mr. Schooley's authorization to do so, Mr. Brown received repayment of $105,000 CAD of his $120,000 CAD promissory note, in lieu of his $105,000 CAD taxable bonus payment. (Affidavit ¶ 14).

In early June, David Brown was questioned about payment of the bonuses to the Stack Teck Canada employees. On June 16, 2006, David Brown received an e-mail from Scott Schooley asking for a meeting. (Affidavit ¶ 15).

On June 22, 2006, David Brown met with Scott Schooley at a trade show in Chicago, Illinois. Mr. Schooley reaffirmed their November 2005 conversation about repayment of Mr. Brown's note in lieu of his bonus payment. Mr. Schooley, however, advised Mr. Brown that there was a Board meeting on June 28, 2006 in Toronto, Canada to discuss the payments of the bonuses, which Mr. Schooley claimed were unknown by the Board. (Affidavit ¶ 16).

Mr. Brown met with part of the Board, i.e., Scott Schooley and Daphne Firth, on June 28, 2006 and was placed on a leave of absence. (Affidavit ¶ 17).

On July 19, 2006, Mr. Brown met with Scott Schooley and Daphne Firth in Canada, and was advised that he was terminated as a result of the payment of the bonuses to the employees of Stack Teck Canada. (Affidavit ¶ 18).

## ARGUMENT

I. **DELAWARE IS A FORUM NON CONVENIENS.**

This Court should dismiss this action under the doctrine of forum non conveniens. A court should dismiss a case based on the doctrine of forum non conveniens "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience" or when the "chosen forum [is] appropriate because of considerations affecting the court's own administrative and legal problems." See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc., 295 F. Supp. 2d 400, 411 (D. Del. 2002) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).

At the outset of any inquiry, this Court must first determine whether there exists an alternative forum. An alternative forum exists in this case in Ontario, Canada, since Defendant is, and, at all relevant times, has been, a resident and citizen of Ontario, Canada. (Affidavit ¶ 1). See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506 (1947). In Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), the Court found that this requirement is satisfied when the defendant is "amenable to process" in the other jurisdiction. Id. at 506-507.

Second, this Court must weigh the private interests affecting convenience of the litigants. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506 (1947). Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a case easy, expedious and inexpensive." Id. at 508.

In this case, at all time relevant to the action, Defendant was an employee of an Ontario company and all of his work was performed in Ontario, Canada at Stack Teck Canada. (Affidavit ¶ 5 & 6). In addition, all of the bonuses that were provided were provided to employees of Stack Teck Canada, who are residents of Ontario, Canada, and were paid by Stack Teck Canada from a Canadian bank account. (Affidavit ¶ 13). Therefore, all documents relating thereto and witnesses, are located in Ontario, Canada. (Affidavit ¶ 13). Upon information and belief, none of the Board members are residents or citizens of Delaware.

In addition, Ontario, Canada is a convenient location for Plaintiff since Stack Teck Canada is one of its two operating companies. (Affidavit ¶ 3). The only connection that exists with Delaware in this case is that Stack Teck Holding was incorporated in Delaware. Stack Teck Holding is solely a holding company which has no offices in Delaware or elsewhere. (Affidavit ¶ 2). There are no individuals paid by Stack Teck Holding. (Affidavit ¶ 2).

Finally, this Court must weigh the public interest in deciding whether the forum is convenient. Factors of public interest involve administrative difficulties flowing from court congestion; local interest in having localized controversies decided at home; avoidance of unnecessary problems in conflict of laws, or in application of foreign law; unfairness of burdening citizens with jury duty in an unrelated forum; and interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." Id. at. 509.

In Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc., 295 F. Supp. 2d 400 (D. Del. 2002), this Court found that the public interest factors favored the foreign forum. See id. at 412. In Bell, the plaintiff filed a trademark infringement and related causes of action, against a defendant Canadian corporation and defendant Delaware corporation. Defendants contended that

conflicts of law would arise requiring the court to apply foreign law; there would be a burden of jury duty imposed upon people in the community having no relation to the litigation; and there was a local interest in the resolution of the matters by the Canadian community. See id. at 410. This Court held that the Delaware action should be dismissed for forum non conveniens, in favor of Canada. That case is, we submit, directly on point and supports the dismissal of this case in favor of Canada. In that case, as in this, conflict of law issues exist. In that case, as in this, a Delaware jury would be burdened. In that case, as in this, a Delaware Court would have to apply Canadian law. In that case, as in this, Canada, to the exclusion of Delaware, has an interest in the outcome. See id. at 412.

In this case, Ontario law must be applied, and neither this Court or a Delaware jury should be required to apply foreign law, which is entirely contrary to the at-will doctrine that Delaware is accustomed to applying. This Court is sitting in diversity and must apply the choice of law rules of Delaware to determine which law governs this matter. See Brown v. The Buschman Company, 2002 U.S. Dist. LEXIS 4087, *11 (D. Del. 2002). Delaware has adopted the "most significant relationship test" for determining which state's law to apply. See e.g., Liggett Group, Inc. v. Affiliated FM Insurance Company, 788 A.2d 134 (Del. Super. 2001). In applying the "significant relationship test", Delaware considers the following contacts "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." See Liggett Group, Inc. v. Affiliated FM Insurance Company, 788 A.2d 134 (Del. Super. 2001)(quoting Restatement (Second) of Conflict of Laws § 188.

8

In this case, with the exception of the Plaintiff's place of incorporation, all the above factors favor the application of Ontario law. See Candlewood Timber Group, LLC v. Pan Am. Energy LLC, 2003 Del. Ch. LEXIS 118 (Del. Ch. 2003)(applying Argentine law to contract claims where place of contracting, negotiation, performance and subject matter of contract were in Argentine), rev'd on other grounds, 859 A.2d 989 (Del. 2004).

Under Ontario law, employment relationships are governed by the Employment Standards Act, 2000, S.O. 2000, C-41 (Can.). [Exhibit B]. Part III, Section 3(1) of the Act states that it is to be applied if "the employee's work is to be performed in Ontario...". The Act provides for "termination pay" for all employees, unless the employee was terminated for cause, and, in certain circumstances, "severance pay." In addition, the common law in Canada (and Ontario) is that the employment relationship contains an implied term that it can only be terminated upon "reasonable notice" unless for "just cause." See Machtinger v. HOJ Industries Ltd. [1992] S.C.J. 41[Exhibit C]. The determination of "just cause" is a factual one. See McKinley v. BC Tel [2001] S.C.J. 40 [Exhibit D].

This lawsuit could, and should, have been brought by the Plaintiff in Ontario, Canada, and litigation can more appropriately be conducted in Ontario, Canada, rather than in Delaware, based on the fact that: inter alia, Defendant's work was performed from, and in, Canada; all of the employees who received the bonuses, which is the gravamen of Plaintiff's Complaint, work and reside in Canada; documentation relating to the case is located in Ontario, Canada; Plaintiff has an office in Ontario, Canada; and Ontario law should be applied. Further, requiring the Defendant, a resident of Ontario, Canada, to travel half way into another country to defend a claim that has no connection with Delaware would be burdensome, inconvenient, unnecessary

and expensive.

## CONCLUSION

For the reasons set forth above, and the authorities in support of the those reasons, Defendant prays that this Court enter an Order dismissing the Complaint.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**

  /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of August 2006, that I caused the attached document to be filed with the Clerk of the Court through CM/ECF, which will send notification of said filing to counsel of record.

                              **RICHARD R. WIER, JR., P.A.**

                              /s/ Richard R. Wier, Jr.
                              Richard R. Wier, Jr. (#716)
                              Daniel W. Scialpi (#4146)
                              Two Mill Road, Suite 200
                              Wilmington, DE 19806
                              (302)888-3222