## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------------X
STACKTECK SYSTEMS, INC.                          :
                                                 :
                                Plaintiff,       :
                                                 :      C.A. No. 06-507 (KAJ)
          -against-                              :
                                                 :
                                                 :
DAVID BROWN                                      :
                                                 :
                                Defendants.      :
                                                 :
-----------------------------------------------------------------------X
```

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

BOUCHARD MARGULES & FRIEDLANDER, P.A.
David J. Margules (I.D. No. 2254)
Dominick T. Gattuso (I.D. No. 3630)
John M. Seaman (I.D. No. 3868)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500

Attorneys for Plaintiff

OF COUNSEL:
SHAPIRO FORMAN ALLEN SAVA & MCPHERSON LLP
Robert W. Forman
Yoram J. Miller
380 Madison Avenue
New York, NY 10017
(212) 972-4900

September 12, 2006

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................... iii

NATURE AND STAGE OF PROCEEDINGS ...................................... 1

SUMMARY OF ARGUMENT .................................................. 2

STATEMENT OF FACTS .................................................... 4

    StackTeck Entrusted Brown With the Responsibility of
    Running Its Operations ................................................ 4

    Brown Was Terminated For Granting Himself and Others More Than
    $830,000 in Bonuses Without Board Approval and Mis-booking His Bonus .......... 5

ARGUMENT ............................................................. 6

    I.    The Relevant Private Interest Factors Favor Delaware .....................7

    II.   The Relevant Public Interest Factors Favor Delaware ..................... 10

CONCLUSION ........................................................... 12

i

## TABLE OF AUTHORITIES

**Cases**

Actrade Fin. Tech. Ltd. v. Aharoni,
2003 WL 22389891 (Del. Ch. Oct. 17, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

Armstrong v. Pomerance,
423 A.2d 174 (Del. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,
295 F. Supp. 2d 400 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DeYoung v. Beddome,
707 F. Supp. 132, 139 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediaries, S.A.S.,
197 F.R.D. 112 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Lacey v. Cessna Aircraft Co.,
862 F.2d 38, 43 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lacey v. Cessna Aircraft Co.,
932 F.2d 170, 180 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

Piper Aircraft Co. v. Reyno,
454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) . . . . . . . . . . . . . . . . . . . . . 7, 10

Rapoport v. Litigation Trust of MDIP Inc.,
2005 WL 3277911 (Del. Ch. Nov. 5, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

Sandvik AB v. Advent International Corp.,
83 F. Supp. 2d 442, 450 (D. Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Vantagepoint Venture Partners 1996 v. Examen, Inc.,
971 A.2d 1108, 1113 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

## **Rules**

Federal Rule of Civil Procedure 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Ontario Rule of Civil Procedure 30.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ontario Rule of Civil Procedure 31.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ontario Rule of Civil Procedure 34.07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ontario Rule of Civil Procedure 36.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff StackTeck Systems, Inc. ("StackTeck" or the "Company"), a Delaware corporation, is suing Defendant David Brown ("Brown"), its former president, chief executive officer and director, for breach of fiduciary duties and a declaration that StackTeck properly terminated Brown for cause. StackTeck alleges that, after missing the Company's EBITDA targets by more than 60%, Brown caused StackTeck to pay him and others bonuses totaling more than $830,000 without obtaining Board approval. StackTeck further alleges that Brown wrongfully caused his bonus to be booked as the repayment of a note for the purpose of avoiding paying taxes. StackTeck terminated Brown on July 19, 2006 after discovering his actions in connection with the bonus payments.

StackTeck filed its Complaint in the Court of Chancery of the State of Delaware in and for New Castle County on July 25, 2006. Brown removed the case to the United States District Court for the District of Delaware on August 15, 2006. Brown filed the instant *forum non conveniens* motion on August 22, 2006.

1

## SUMMARY OF ARGUMENT

StackTeck, a Delaware corporation, brings this action against Brown (its former director,

president and CEO) for breaching his fiduciary duties to StackTeck by

- causing more than $830,000 in bonuses to be issued to himself and others without seeking or obtaining approval from StackTeck's Board, and

- in order to avoid paying taxes on the bonus he awarded himself, violating StackTeck's lending agreements by causing his unauthorized bonus of approximately $105,000 to be mis-booked as the repayment of a note.

StackTeck asserts two causes of action – each arising from Brown's wrongful conduct in

connection with the bonuses. *First*, StackTeck asserts a breach of fiduciary duty claim to recover

the bonuses Brown issued without Board approval. *Second*, StackTeck seeks a declaration that

Brown's breaches of his fiduciary duties constituted just cause to terminate Brown's employment

with StackTeck and its operating subsidiaries.

StackTeck chose to bring its claims in Delaware, StackTeck's place of incorporation and

the State whose law governs Brown's fiduciary duties. StackTeck's choice of forum is entitled to

substantial deference and should only be disturbed in "exceptional circumstances." *E.I. duPont*

*de Nemours and Co. v. Rhodia Fiber and Resin Intermediaries, S.A.S*, 197 F.R.D. 112, 125 (D.

Del. 2002) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 91 L.E. 1055

(1947)); *Sandvik AB v. Advent International Corp.*, 83 F. Supp. 2d 442, 450 (D. Del. 1999)

(citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Brown's arguments, which fall far short of showing exceptional circumstances, suffer

from a fundamental and fatal defect: Brown ignores the allegations underlying Plaintiff's claims.

StackTeck is suing Brown for actions that violated fiduciary duties he owed to StackTeck, a

2

Delaware corporation, as opposed to StackTeck's California or Canadian subsidiaries.

Remarkably, Brown does not even mention that he was a director of StackTeck in his moving

papers and fails to address the fact that he was terminated for violating duties he owed to

StackTeck. Placed in context, it is clear the relevant public and private interest factors favor

resolving StackTeck's claims in Delaware.

The relevant private interest factors favor Delaware:

- Delaware is a more convenient forum for the likely witnesses in this dispute. With the exception of Brown, virtually all of the witnesses likely to offer testimony relevant to the issues to be litigated (such as whether Brown sought or received Board authorization before awarding the bonuses at issue) live and work on the East Coast of the United States. Tellingly, Brown did not identify another likely witness who resides in Canada.[1]

- It will be far more efficient and economical to obtain deposition testimony from witnesses who may be unwilling to testify voluntarily (such as StackTeck's former directors) in this Court than in an Ontario action because those witnesses live and work in the United States and are more easily subject to subpoena authority.

- It will be far more convenient to subpoena documents from third-parties such as StackTeck's former directors and former owners because those witnesses, and most likely their documents, are located in the United States.

Similarly, the relevant public interest factors favor Delaware:

- Delaware has a "strong interest" in claims such as StackTeck's that officers and directors of Delaware corporations breached their fiduciary duties "regardless of where that breach occurs." *Actrade Fin. Tech. Ltd. v. Aharoni,* 2003 WL 22389891, *4 (Del. Ch. Oct. 17, 2003).

- Delaware law, not Ontario law, governs whether an officer or director such as Brown breached fiduciary duties he owed to a Delaware corporation

---

[1] The location of the employees who received the bonuses is irrelevant given that they can shed no light on Board approval.

3

> such as StackTeck. *Rapoport v. Litigation Trust of MDIP Inc.*, 2005 WL
> 3277911,*5 (Del. Ch. Nov. 5, 2005); *see also Vantagepoint Venture
> Partners 1996 v. Examen, Inc.*, 971 A.2d 1108, 1113 (Del. 2005).

Brown cannot establish that it would be "vexatious and oppressive" to litigate in
Delaware, StackTeck's chosen forum. On the contrary, the public and private interest factors
confirm that Delaware is the most convenient forum for this dispute. StackTeck therefore
respectfully requests that the Court deny Brown's *forum non conveniens* motion.

## STATEMENT OF FACTS

### StackTeck Entrusted Brown With the Responsibility of Running Its Operations

Plaintiff StackTeck is a Delaware corporation which provides integrated plastic tooling
solutions for the injection molding industry through its subsidiaries in California and Canada.

Brown ran StackTeck's operations for nearly a decade and was responsible for the
performance of its operating subsidiaries. Brown was the president, chief executive officer and a
director of StackTeck. Brown was also the president and CEO of Plaintiff's Ontario, Canada-
based operating subsidiary, StackTeck Systems Limited ("StackTeck Canada") and the president
and a director of StackTeck's California-based operating subsidiary, StackTeck California Ltd.
("StackTeck California"). (Paragraph 4 of the Affidavit of Scott Schooley dated September 12,
2006 ("Schooley Aff.")).

Although Brown lived in Canada, his job required him to spend considerable time in the
United States. In addition to overseeing StackTeck California, Brown frequently traveled to the
United States to meet other StackTeck directors, meet with StackTeck's lenders, attend trade
shows, visit customers and evaluate acquisition opportunities. (Schooley Aff. ¶ 5).

4

Under Brown's stewardship, StackTeck defaulted on approximately $30 million in loans issued by its principal lenders, including Annex Capital Partners LLC, a New York-based investment firm ("Annex"), and Woodside Capital Management, LLC, a Connecticut-based investment firm (collectively with the entities it manages, "Woodside"). Due to these defaults, StackTeck was barred from making payments on notes Brown and others received from the sale of businesses to StackTeck. (Schooley Aff. ¶¶ 3, 6).

In the Fall of 2005, Annex and Woodside purchased substantially all of StackTeck's common stock from Castle Harlan, Inc. ("Castle Harlan"), a Delaware corporation headquartered in New York. Prior to the acquisition, Castle Harlan designees constituted a majority of StackTeck's Board of Directors. (Schooley Aff. ¶ 7).

After Annex and Woodside's acquisition, StackTeck's Board was reconstituted. The Board members Castle Harlan had appointed (all three live and work on the East Coast) were replaced with representatives of Annex and Woodside (all of whom live and work on the East Coast). (Schooley Aff. ¶¶ 7-8).

## Brown Was Terminated For Granting Himself and Others More Than $830,000 in Bonuses Without Board Approval and Mis-booking His Bonus

StackTeck's performance during 2005 fell far short of expectations. StackTeck's EBITDA for 2005 was only $2 million, approximately 60% below its $5 million target. (Schooley Aff. ¶ 9). Between August 2005 and February 2006, Brown caused StackTeck and its subsidiaries to borrow $5,125,000 to fund operations. (Compl. ¶ 9).

Without seeking or receiving Board authorization, Brown caused approximately $830,000

5

in bonuses to be paid to himself and other members of StackTeck Canada's management.
Although StackTeck was prohibited from repaying any of his note because it was in default on
$30 million in loans, Brown attempted to avoid paying taxes on the approximately $105,000
bonus he awarded himself by causing the bonus to be mis-booked as a repayment of his note.
(Complaint ¶ 10; Schooley Aff. ¶¶ 10-11).

In June 2006, the four other members of StackTeck's Board of Directors learned of the
unauthorized bonuses and the mis-booking of Brown's bonus. On July 19, 2006, after
concluding an internal investigation, StackTeck terminated Brown. (Schooley Aff. ¶ 12).

## ARGUMENT

A Court should only decline to exercise jurisdiction for *forum non conveniens* in
"exceptional circumstances." *E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin
Intermediaries, S.A.S*, 197 F.R.D. 112, 125 (D. Del. 2002) (citing *Gulf Oil Corp. v. Gilbert*, 330
U.S. 501, 504, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). "The plaintiff's choice of forum should
rarely be disturbed. *Id.* Moreover, "where the plaintiff brings suit in its home forum, that choice
deserves an even higher degree of deference." *Id.*

"[T]he defendant bears the burden of persuasion as to all elements of the forum non
conveniens analysis." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). To
prevail on a *forum non conveniens* motion, the defendant must establish "that the plaintiff's
chosen forum **is oppressive and vexatious to the defendant out of all proportion to the
plaintiff's convenience."** *Sandvik AB v. Advent International Corp.*, 83 F. Supp. 2d 442, 450
(D. Del. 1999) (emphasis added) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102

6

S.Ct. 252, 70 L.Ed.2d 419 (1981)).[2] The defendant must therefore show that the balance of the private and public interests are "strongly in favor of the defendant." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988).

Brown does not, and cannot, satisfy his burden of establishing that it would be "oppressive and vexatious" to litigate in Plaintiff's chosen forum of Delaware.

## I.    The Relevant Private Interest Factors Favor Delaware

The private interest factors include "relative ease of access to sources of proof," "the cost of obtaining attendance of willing witnesses", the "availability of compulsory process for attendance of unwilling" witnesses, and "all other practical problems that make a trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242 (1981).

Although Brown claims the private interest factors favor Delaware, he makes no attempt to identify the factual issues that will be litigated. (Def. Br. at 7, 9). When the factual issues to be tried are considered, it is clear that relevant private interest factors favor Delaware.

StackTeck's claims are predicated on allegations that Brown breached fiduciary duties he owed to StackTeck (as opposed to its subsidiaries) by issuing unauthorized bonuses and causing his unauthorized bonus to be improperly booked as the repayment of a note. The core factual issues are (i) whether StackTeck's Board approved more than $830,000 in bonus payments which StackTeck seeks to recover, (ii) whether Brown was required to obtain StackTeck Board's approval before awarding bonuses, (iii) whether Brown disclosed his actions concerning the bonuses to the other StackTeck directors, (iv) whether Brown improperly caused his bonus

---

[2] A party seeking *forum non conveniens* dismissal must also show that an "alternative forum exists." *Id.* Plaintiff does not challenge that Ontario, Canada could provide a forum, albeit inferior to Delaware, for Plaintiff's claims.

7

payment to be booked as the repayment of a note owed by StackTeck, and (v) StackTeck's decision to terminate Brown.

With the exception of Brown, the witnesses having the most knowledge about each of these core factual issues live and work on the East Coast of the United States, including

- the four current members of StackTeck's Board,[3] and

- the three Castle Harlan appointees who served on StackTeck's Board before Annex and Woodside acquired the Company in 2005.[4]

Delaware is more convenient for each of those witnesses than Ontario, most notably because it is closer to their homes and places of business than Ontario, and the travel times from their homes to Delaware are shorter. (Schooley Aff. ¶ 14).

Furthermore, Delaware will be the more convenient forum if any of those witnesses refuses to testify voluntarily. The witnesses not under either party's control, most notably StackTeck's former Board members, are in the United States.[5] While neither Delaware nor Ontario could compel them to testify at trial, it will be far easier to obtain their depositions for use at trial in a Delaware proceeding.

_____

[3] The following directors of StackTeck were appointed by Annex and Woodside: Scott Schooley (resides and works in Connecticut); Daffney Firth (resides and works in Massachusetts); Alexander Coleman (resides and works in New York); and Robert Fowler (resides and works in New York). (Schooley Aff. ¶ 8).

[4] The former StackTeck directors who served on the StackTeck Board before Annex and Woodside's acquisition were appointed by Castle Harlan and are all believed to live in or around New York. (Schooley Aff. ¶ 7).

[5] Plaintiff's reliance on the fact that the employees who received bonuses not approved by StackTeck's Board live in Canada is misplaced. *First*, the employees are unlikely to have any relevant testimony because the recipients and amounts of the bonuses are not at issue. *Second*, StackTeck has an obligation to and agrees to make persons under its control, such as the employees of its subsidiaries in California and Ontario, available to testify at deposition and trial.

8

Under Federal Rule of Civil Procedure 45, a witness in the United States can be subpoenaed to give testimony without leave of court anytime during discovery. In an Ontario proceeding, a party must resort to the time-consuming motion and letters rogatory process. *See* Ontario Rules of Civil Procedure 31.10 (showing required to obtain non-party deposition testimony), 34.07 and 36.03 (procedures for obtaining letters rogatory).[6] In addition to be being less convenient, Ontario requires parties to make a heightened showing of need to obtain non-party depositions, creating the risk that relevant information may not be discoverable in an Ontario proceeding. Ontario Civil Practice Rule 31.01; *cf. Lacey*, 932 F.2d at 185 (discussing difficulty of obtaining deposition testimony from unwilling witnesses and letters rogatory procedures in reversing *forum non conveniens* dismissal in favor of British Colombia, Canada); *DeYoung v. Beddome*, 707 F. Supp. 132, 139 (S.D.N.Y. 1989) (forum where testimony could be obtained without letters rogatory more convenient than forum where letters rogatory required).

Finally, the relative access to documents, to the extent relevant, favors Delaware. The number of relevant documents is expected to be relatively small. The overwhelming majority of those documents are in StackTeck's possession or control, including StackTeck's Board minutes, StackTeck's financial records and Brown's employment records. Those documents can be produced just as easily in a Delaware or an Ontario proceeding. Likewise, Brown does not, and cannot, articulate how it would make any practical difference whether he produces his limited number of documents in a Delaware or an Ontario action.

To the extent relevant documents are not in the custody, possession or control of the

---

[6]The Ontario Civil Practice Rules are available on-line at http://www.e-laws.gov.on.ca/DBLaws/Regs/English/900194a_e.htm.

9

parties, the documents are likely in the possession of Castle Harlan or StackTeck's former directors – all of whom are located in the United States. The parties could simply subpoena those documents under F.R.C.P. 45. In contrast, in an Ontario action, the parties could only obtain the documents, if at all, via time consuming motion and letters rogatory process after party discovery was completed. *See* Ontario Rules of Civil Procedure 30.10; *cf. Lacey*, 932 F.2d at 184-85 (discussing difficulty in obtaining evidence in the United States in a British Columbia, Canada proceeding).

The relevant private interest factors therefore favor Delaware.

## II.   The Relevant Public Interest Factors Favor Delaware

The public interest factors include "the administrative difficulties flowing from court congestion", the "local interest in having localized controversies decided at home", the interest in "having the trial . . . in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 242.

In discussing the public interest factors, Brown again ignores the fact that Plaintiff's claims are predicated on allegations that Brown, in his capacity as an officer of a Delaware corporation, violated fiduciary duties he owed to a Delaware corporation. Viewed in context, the relevant public factors, like the private interest factors, favor Delaware.

*First*, contrary to Brown's conclusory assertions (Motion at 8), Delaware has a strong interest in this dispute. As the Delaware Courts have made clear, Delaware has a "significant interest in protecting Delaware companies from the breaches of fiduciary duties . . . regardless of

10

where that breach occurs." *Actrade Fin. Tech. Ltd. v. Aharoni,* 2003 WL 22389891, *4 (Del. Ch. Oct. 17, 2003); *see also Armstrong v. Pomerance*, 423 A.2d 174, 177 (Del. 1980) (holding that Delaware has "a substantial interest in actively overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations").[7]

*Second*, Delaware is the forum more at home with the law that governs Plaintiff's claims. StackTeck's first and principal claim is a breach of fiduciary duty claim to recover the bonuses Brown distributed in violation of his fiduciary duties to StackTeck.

Fiduciary duty claims are governed by the law of the state of incorporation. *Rapoport v. Litigation Trust of MDIP Inc.*, 2005 WL 3277911, *5 (Del. Ch. Nov. 5, 2005); *Vantagepoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108, 1113 (Del. 2005). StackTeck's first cause of action is therefore governed exclusively by Delaware law.

Moreover, this Court is fully capable of adjudicating Plaintiff's second, and secondary, claim for a declaration that Brown was terminated from his positions as an officer of StackTeck and its subsidiaries in California and Ontario for cause.

Even if Ontario (where Brown lived and spent the majority of his time) law is ultimately deemed to apply to Plaintiff's declaratory judgment claim, Plaintiff has not, and cannot, identify any reason why this Court is not fully capable of applying Ontario's definition of "cause." Most importantly, the misconduct Brown is accused of consists of violated fiduciary duties created by

---

[7] Brown's reliance on *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400 (D. Del. 2002) is wholly misplaced. *Bell Helicopter* did not involve a dispute between a Delaware corporation and one of its directors over whether the director breached his fiduciary duties to the corporation. On the contrary, *Bell Helicopter* involved a trademark dispute between parties who had no fiduciary relationship. *Id.*

11

and governed by Delaware law. A court familiar with Delaware fiduciary duty law is in the best

position to determine the significance of breaches of those fiduciary duties.

The relevant public interest factors therefore favor Delaware.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss for *forum non conveniens*.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

By: _____

David J. Margules (I.D. No. 2254)
Dominick T. Gatusso (I.D. No. 3630)
John M. Seaman (I.D. No. 3868)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500

Attorneys for Plaintiff

OF COUNSEL:

Robert W. Forman
Yoram J. Miller
SHAPIRO FORMAN ALLEN SAVA & MCPHERSON LLP
380 Madison Avenue
New York, NY 10017
(212) 972-4900

Date:    September 12, 2006

12

# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                        Page 1
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
**(Cite as: 2003 WL 22389891 (Del.Ch.))**

**C**
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Chancery of Delaware.
ACTRADE FINANCIAL TECHNOLOGIES LTD.
and Actrade Commerce, Ltd., Plaintiffs,
v.
Amos AHARONI, Defendant.
**No. Civ.A. 20168.**

Submitted July 31, 2003.
Decided Oct. 17, 2003.
Daniel A. Dreisbach, Lisa A. Schmidt, James H.
McMackin, III, Richards, Layton & Finger,
Wilmington, Delaware; Daniel J. Lefell, Stacey A.
Shortall, Ariel Cannon, Paul, Weiss, Rifkind,
Wharton & Garrison LLP, New York, New York, for
the Plaintiffs.

Neal J. Levitsky, Fox Rothschild LLP, Wilmington,
Delaware; Sigmund S. Wissner-Gross, May
Orenstein, Clifford J. Bond, Heller, Horowitz & Feit,
P.C., New York, New York, for the Defendant.

*MEMORANDUM OPINION AND ORDER*

LAMB, Vice Chancellor.

I.
**\*1** A Delaware corporation and its wholly owned
foreign subsidiary sued their former Chairman and
CEO, a non-US resident, for breach of fiduciary duty
and misappropriation of monies. On a motion to
dismiss, the court concludes that it has properly
obtained jurisdiction over the non-resident defendant
by means of the director service statute, 10 *Del. C.* §
3114. The court also concludes that the use of that
statute to obtain jurisdiction over a foreign resident
does not involve the service of process outside the
United States and, therefore, does not require
compliance with the Hague Convention governing
service abroad of judicial writs. The court also
concludes that the matters asserted in the complaint
are properly within its jurisdiction and that the
complaint should neither be dismissed nor stayed in
favor of a substantially different action pending in the
Cayman Islands.

II.

A. *The Parties*

The plaintiff, Actrade Financial Technologies Ltd.
("Actrade DE"), is a Delaware corporation. Actrade
DE wholly owns several subsidiary companies whose
business is selling short-term financing agreements.
[FN1] Actrade Commerce Ltd. ("Actrade
Commerce"), an Antiguan corporation, is one of
these subsidiaries and is also a plaintiff in this action.
Actrade DE and Actrade Commerce are sometimes
hereinafter referred to as "Actrade" or "the plaintiff."

> FN1. Actrade DE wholly owns Actrade
> International, a New York corporation.
> Actrade International wholly owns Antiguan
> corporation Actrade S.A. Actrade S.A.
> wholly owns Bahamian corporation Actrade
> Resources and Antiguan corporation
> Actrade Commerce Ltd.

The defendant, Amos Aharoni, a resident of the State
of Israel, was the Chairman of the Board of Actrade
DE and one of the company's founders. He was also
the sole director and officer of Actrade Commerce, as
well as other directly and indirectly owned
subsidiaries of Actrade DE.

B. *The Disputed Transfers*

The complaint alleges that, on or about June 25,
2002, Aharoni faxed a wire transfer instruction to
Banco Comercial Portuguese ("BCP") in the Cayman
Islands directing BCP to transfer $10,009,200 from
Actrade Commerce's account at BCP to International
Clearing Corporation ("ICC"). The complaint further
alleges that, on or about July 12, 2002, Aharoni faxed
another wire transfer instruction from Israel to BCP
in the Cayman Islands ordering it to transfer
$21,656,700 from Actrade Commerce's account at
BCP to the account of an entity called Fort. The total
amount of these transfers ("disputed transfers") is
approximately $31.6 million.

On August 2, 2002, Actrade DE's board of directors
instructed its Audit Committee to investigate alleged
improprieties in the operations of Actrade DE and its
subsidiaries. On August 8, 2002, counsel for the
Audit Committee wrote to Aharoni seeking to
interview him and obtain all Actrade documents
under his control. On August 14, Actrade DE's Chief
Financial Officer e-mailed Aharoni seeking access to

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
**(Cite as: 2003 WL 22389891 (Del.Ch.))**

all documents under Aharoni's control. On August 28, 2002, the Audit Committee faxed to Aharoni's U.S. and Israeli counsels copies of a document preservation letter that Actrade DE had received from the SEC and the U.S. Attorney's Office. On September 6, 2002, the Audit Committee again wrote Aharoni's U.S. counsel seeking all Actrade documents in Aharoni's control.

**\*2** Aharoni eventually gave Actrade five loan agreement documents dated July 10, 2002. [FN2] These agreements show Actrade Commerce loaning a total of $31.6 million to five foreign entities. [FN3] Aharoni contends that these loans explain the disputed transfers and that they have already been repaid with $6 million in interest. Actrade alleges that there was no legitimate business purpose for these loans and that neither Actrade DE nor any Actrade subsidiary has received any payment on them. Actrade further alleges that Aharoni controls ICC and Fort and that he fabricated the loan agreements after the disputed transfers to conceal his theft of $31.6 million from Actrade Commerce.

> FN2. Through counsel, Aharoni refused to be interviewed or provide substantive information to the Audit Committee. On August 21, 2002, Aharoni resigned all director and officer positions he had held for Actrade DE and its subsidiaries. In late September 2002, Aharoni made available a group of Actrade documents that were under his control. Among these were the five loan agreements.

> FN3. Onyx Holdings, Ltd., Garibaldi do Brazil Limitida, LLC, Vision Art Group, Manerfold Finance Corp., and LLC Setkomp.

### C. *The Interpleader Action*

On September 26, 2002, BCP commenced an interpleader action in the Cayman Islands regarding the ICC and Fort accounts that had received the disputed transfers. BCP named Actrade DE, Actrade Commerce, Actrade Resources, Actrade S.A., ICC, Fort, Commercial Finance Institution ("CFI"), and BCP as claimants to the money in the accounts. By consent order, Actrade DE and its subsidiaries became plaintiffs in that action on May 2, 2003, leaving the remaining parties as defendants. On May 5, 2003, Actrade filed a complaint seeking an accounting, a declaration that Fort and ICC hold the disputed funds as constructive trustees for Actrade,

and payment of the amount the accounting determines to be owed. The Cayman Islands action does not include a claim for breach of fiduciary duty and does not name Aharoni as a party, although Aharoni argues that he expects to eventually be named as a third-party defendant.

### D. *The Motion To Dismiss*

Actrade filed a complaint in this court on February 20, 2003, alleging breach of fiduciary duty, misappropriation and conversion of corporate assets, fraud, and corporate waste. Aharoni has moved to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, *forum non conveniens,* failure to join necessary parties, and failure to state a claim for which relief can be granted. Alternatively, Aharoni moves for a stay of this action pending the outcome of the Cayman Islands action. Finally, Aharoni moves to strike the complaint's references to the document preservation letter from the SEC and the U.S. Attorney's office as immaterial and "scandalous." In considering a motion to dismiss, this court views all facts in a light most favorable to the non-moving party. [FN4]

> FN4. *See e.g. Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del.1998).

### III.

Aharoni challenges this court's personal jurisdiction on two grounds. First, Aharoni claims that this court cannot rely upon 10 *Del. C.* § 3114 to obtain personal jurisdiction over him because he did not commit his allegedly wrongful acts in his capacity as a director of a Delaware corporation (Actrade DE), but rather in his capacity as a director of wholly owned foreign subsidiary (Actrade Commerce). [FN5] Second, Aharoni argues that the attempt to serve process on him pursuant to section 3114 violated the Hague Convention of 1963, a treaty of the United States, and therefore failed to confer jurisdiction. [FN6] For reasons expressed below, neither of these arguments has merit.

> FN5. Memorandum of Law in Support of Motion to Dismiss the Complaint of Defendant Amos Aharoni Based, *Inter Alia,* Upon Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, *Forum Non* Conveniens, Prior Pending Proceeding, and Failure to Join Necessary Parties, ("Def.Op.Br.") p. 8.

> FN6. Def. Op. Br. p. 12.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
(Cite as: 2003 WL 22389891 (Del.Ch.))

Page 3

A. *The Reach Of 10 Del. C. § 3114*

**\*3** Actrade bases its claim of personal jurisdiction on Delaware's Director Consent statute, 10 *Del. C.* § 3114(a), which reads:

Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

This court has personal jurisdiction over Aharoni because he consented to that jurisdiction by becoming the director of a Delaware corporation. As the Delaware Supreme Court has held, a director "accept[s][his] directorship [of a Delaware corporation] with explicit statutory notice, via § 3114 that [he] could be haled into a Delaware court to answer for the alleged breaches of the duties imposed on [him] by the very laws which empowered [him] to act in his corporate capacities." [FN7] Aharoni cannot escape personal jurisdiction under section 3114 by mischaracterizing his alleged wrongful acts as having been done purely in the capacity of directorship of the foreign subsidiary. Actrade DE conducted all of its business through its foreign subsidiaries, "making oversight of subsidiaries a crucial aspect of the [parent] board's function." [FN8] Under *Grace,* Aharoni's oversight

or lack thereof of the actions of Actrade Commerce can constitute a breach of fiduciary duty to Actrade DE.

> FN7. *See Armstrong v. Pomerance,* 423 A.2d 174, 177 (Del.1980) (finding personal jurisdiction over foreign directors on a claim for breach of fiduciary duty to a Delaware corporation when directors had no contact with Delaware other than being directors of the Delaware corporation).

> FN8. *See Grace Bros., Ltd. v. Uniholding Corp.,* 2000 WL 982401, at \*12 (Del. Ch. July 12, 2000) (hereinafter *Grace* ).

In *Grace,* the defendants who were directors of both a Delaware parent and foreign subsidiary company allowed the subsidiary to assume control over the parent's primary asset and thus become the owner of the parent, to the detriment of the parent's stockholders but to the benefit of the subsidiary. The *Grace* court rejected the defense that "a director of a parent board ... has no duty to stop himself from injuring the parent while wearing his subsidiary hat." [FN9] This court found personal jurisdiction over the defendants for the Delaware parent's claim even though the wrongful action occurred through a foreign subsidiary.

FN9. *Id.* at \*13.

**\*4** Similarly in *Technicorp Int'l II v. Johnston,* [FN10] this court found personal jurisdiction over persons who were directors of both a Delaware parent and its foreign subsidiary for wrongful acts done in the name of the subsidiary. Under *Technicorp,* wrongful diversions from a foreign subsidiary are a breach of fiduciary duty to both the subsidiary and to its parent. [FN11]

> FN10. 2000 WL 713750 (Del. Ch. May 31, 2000) (hereinafter *Technicorp* ).

FN11. *Id.* at \*4.

Aharoni argues that Delaware has little or no interest in hearing this case because the disputed acts took place in either Israel or the Caribbean, directly injured only an Antiguan subsidiary, and any injury to the Delaware company was indirect and incidental. On the contrary, Delaware has a significant interest in protecting Delaware companies from breaches of fiduciary duty by their directors, regardless of where that breach occurs. [FN12] That interest is magnified

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
(Cite as: 2003 WL 22389891 (Del.Ch.))

Page 4

in this case because it seems Actrade DE has no other forum in which to litigate its breach of fiduciary duty claim. Aharoni has not submitted to the personal jurisdiction of the Cayman Islands court, nor is he named as a party in that action. Aharoni's implied consent to Delaware's personal jurisdiction through section 3114 ensures that Actrade DE has a forum in which to litigate its injury.

FN12. *Id.*

Since this court has personal jurisdiction over Aharoni for Actrade DE's breach of fiduciary duty claim, that jurisdiction extends "to any and all relief that might be necessary to do justice between the parties." [FN13] This includes jurisdiction over Actrade Commerce's claims. Under very similar facts, the *Technicorp* court found personal jurisdiction over defendant directors for the claims of a foreign subsidiary because those claims "arise out of the same core facts as [the claims of the parent] and because it was therefore reasonably foreseeable that [the subsidiary] as well as [the parent] would seek to recover those diverted funds in the same lawsuit." [FN14]

FN13. *Gans v. MDR Liquidating Corp.,* 1990 WL 2851, at \*10 (Del. Ch. Jan. 10, 1990).

FN14. *Technicorp* at \*5 n. 12.

Aharoni's attempt to distinguish *Technicorp* is unpersuasive. He argues that Delaware has a greater interest in enforcing the fiduciary duty owed to a Delaware parent company when the subsidiary was a directly-owned buyout vehicle than when the subsidiary is indirectly owned and conducts ordinary business. [FN15] However, Aharoni offers no reason why this difference mandates a disparate result for the same act-breaching a fiduciary duty to a parent company by converting its subsidiary's money for personal use. Since the same core facts are at issue in both of Actrade's claims, the dual-plaintiff suit was entirely foreseeable and *Technicorp* applies. This court has personal jurisdiction over Aharoni for all of Actrade's claims.

FN15. Def. Op, Br. p. 9.

B. *Service Of Process And The Hague Convention*

Aharoni next contends that 10 *Del. C.* § 3114(b), as applied to him, violates the Hague Convention. [FN16] Under Aharoni's interpretation of section

3114(b), service is a two-step process that, in his case, included both (1) the service on Actrade's registered agent in Delaware, and (2) the mailing by the Register in Chancery of a copy of that process to him in Israel. Because the second part of this "service" was made on him overseas, he contends, the Hague Convention applies to invalidate the attempted service. [FN17] Actrade responds that for the purpose of the Hague Convention, service on Aharoni pursuant to section 3114(b) was accomplished by serving Actrade's registered agent. According to Actrade, the subsequent mailing by the Register in Chancery was not a necessary part of "service," but merely an additional form of notice. Therefore, Actrade argues, the Hague Convention has no application.

FN16. The pertinent part of § 3114(b) is as follows:
Service of process shall be effected by serving the registered agent (or, if there is none, the Secretary of State) with 1 copy of such process in the manner provided by law for service of writs of summons. In addition, the Prothonotary or the Register in Chancery of the court in which the civil action or proceeding is pending shall, within 7 days of such service, deposit in the United States mails, by registered mail, postage prepaid, true and attested copies of the process, together with a statement that service is being made pursuant to this section, addressed to such director, trustee or member at the corporation's principal place of business and at the residence address as the same appears on the records of the Secretary of State, or, if no such residence address appears, at the address last known to the party desiring to make such service.

FN17. Reply Memorandum of Law in Further Support of Motion to Dismiss the Complaint of Defendant Arnos Ahoroni Based, *Inter Alia,* Upon Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, *Forum Non* Conveniens, Prior Pending Proceeding, and Failure to Join Necessary Parties, ("Def.Rep.Br.") p. 5. The Hague Convention, if it applied, would have required that any attempt to serve process on an Israeli resident be mailed to Israel's Directorate of the Courts, rather than directly to the resident. The Register in Chancery mailed Actrade's process directly to Aharoni.

Not Reported in A.2d                                                                                      Page 5
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
(Cite as: 2003 WL 22389891 (Del.Ch.))

**\*5** As a matter of textual interpretation, Actrade's reading of the statute is by far more compelling. "Service" under the statute is described in the first sentence of the section and is limited to "serving the registered agent." The additional act of mailing is required to be made "within 7 days of such service." This reading is also consistent with the strong public policy of this State to provide a certain and easily accessible forum in which to litigate claims against those who choose to become directors of Delaware corporations. [FN18] Delaware's interest in defining and enforcing these obligations is substantial and does not depend on or relate to the place of residence of the director. [FN19] Delaware requires appointment of an in-state registered agent in order to effectuate service of foreign directors entirely in Delaware, hence avoiding the more difficult and time-consuming steps necessary to effect service of process on persons outside the state. [FN20] The United States Supreme Court has ruled that the Hague Convention applies only to service effectuated outside the United States. [FN21] For that reason, that treaty is irrelevant to section 3114(b) service in Delaware.

> FN18. *See Pestolite, Inc. v. Cordura Corp.,* 449 A.2d 263 (Del.Super.1982).

> FN19. *Id.*

> FN20. *Id.* at 266 (§ 3114 enacted specifically to ensure jurisdiction over directors of Delaware corporations for the claims of those corporations in response to *Shaffer v. Heitner,* 433 U.S. 186 (1977)).

> FN21. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 701 (1988).

For the foregoing reasons, Aharoni's motion to dismiss for lack of personal jurisdiction and improper service of process will be denied. [FN22]

> FN22. Since the court has personal jurisdiction pursuant to § 3114, I decline to consider whether 10 *Del. C.* § 366(a) (the sequestration statute) could provide an alternate basis for personal jurisdiction.

### IV.

Aharoni challenges this court's subject matter jurisdiction by characterizing the disputed action as a simple conversion of Actrade funds that can be fully remedied by damages. [FN23] Aharoni argues that Actrade may invoke equity jurisdiction only if damages cannot adequately remedy Actrade's injury. He is simply wrong. This court has subject matter jurisdiction over claims that are equitable in nature even if monetary damages are sought in relief. [FN24] Breach of fiduciary duty is a well-established equitable claim properly invoking the subject matter jurisdiction of this court. [FN25] Aharoni's motion to dismiss for lack of subject matter jurisdiction must be denied.

> FN23. Def. Rep. Br. pp. 12-13.

> FN24. *See* 10 *Del. C.* § 3411; *see also International Business Machines v. Comdisco,* 602 A.2d 74, 78 n. 6 (Del. Ch.1991).

> FN25. *See e.g. Clark v. Teeven Holding Co., Inc.,* 625 A.2d 869, 875 (Del. Ch.1992) ("This Court thus has jurisdiction to hear such traditional, equitable matters as trusts and fiduciary relations").

Aharoni next contends that even if Actrade has an equitable claim, the court should refuse to exercise jurisdiction over any related legal claims. Instead, he argues, the court should sever these claims to the Superior Court where Aharoni may receive a jury trial. The facts of this case do not warrant severance of Actrade's legal claims from the central claim alleging breach of fiduciary duty. Once this court finds equity jurisdiction over part of a case, it may, at its discretion, exercise jurisdiction over related legal claims. [FN26] Factors that may cause this court to deny a motion to sever include: "to resolve factual issues; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law." [FN27] Actrade bases all of its claims on two allegedly wrongful wire transfers ordered by Aharoni. Since the factual inquiry for Actrade's breach of fiduciary duty claim would be identical to that of the misappropriation, fraud, and waste claims, all the factors of the *Getty Refining* test weigh against the duplicative factual inquiry that severance would cause. [FN28] The court will therefore exercise jurisdiction over all of Actrade's claims.

> FN26. *See Getty Refining & Marketing Co. v. Park Oil, Inc.,* 385 A.2d 147, 149 (Del. Ch.1978).

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
(Cite as: 2003 WL 22389891 (Del.Ch.))

FN27. *Id.* at 150.

FN28. *Id.*

### V.

**\*6** Aharoni's motion further asserts a laundry list of reasons why this court should either dismiss or stay the complaint. The arguments made are insubstantial and will be discussed only briefly.

Aharoni's motion to dismiss under the doctrine of *forum non conveniens* fails for two reasons. First, Aharoni offers no persuasive reason why Delaware is an inconvenient forum for a director of a Delaware corporation to litigate a claim for breach of fiduciary duty. Second, Aharoni has failed to suggest a comparable action in a forum so much more convenient that this court should dismiss the present action in its favor.

An action will be dismissed for *forum non conveniens* only in "the rare case where a dismissal of a complaint is appropriate because this forum is overwhelmingly and unduly inconvenient...." [FN29] A mere preference for another forum is insufficient: "While there is no doubt that [Aharoni] would prefer to litigate this case in his home [country], he cannot plausibly claim any undue inconvenience from having to defend himself against claims for breach of fiduciary duty in this court. [The defendant] voluntarily chose to serve as the director and principal operating officer of a Delaware corporation. He is an intelligent man who cannot have been ignorant of the possibility that he would face a suit in Delaware in the event of a dispute between himself and [the Delaware corporation he served]." [FN30]

> FN29. *See* *Caithness Resources, Inc. v. Ozdemir,* 2000 WL 1741941 at 1 (Del. Ch. Nov. 22, 2000).

FN30. *Id.* at \*5.

Additionally, Aharoni does not offer a comparable, more convenient action to which this court should defer. The only other related action currently pending is the Cayman Islands action, which is both incomparable and less convenient than this action. The Cayman Islands action neither names Aharoni as a party nor involves a claim for breach of fiduciary duty. It is difficult to see how an action prosecuting a different claim against a different party would warrant dismissal for *forum non conveniens.*

Even if the Cayman Islands action were comparable,

it would certainly be no more convenient than this action. Factors measuring convenience include "(1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this state more properly should decide than those of another jurisdiction; ... and [5] all other practical problems that would make the trial of the case easy, expeditious and inexpensive." [FN31] None of these factors weigh in favor of dismissal. The fact that this action may involve the laws of multiple jurisdictions or the compulsion of witnesses therefrom is not compelling because those problems would arise wherever this dispute is litigated. The central claim of this case is breach of fiduciary duty to a Delaware company. This claim requires application of Delaware law within the special expertise of this court. Finally, Aharoni has little cause to complain of inconvenience in defending an action properly before this court when he consented to its jurisdiction.

> FN31. *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1198-99 (Del.1997).

**\*7** The court also declines to stay this action for the same reasons it declines to dismiss for *forum non conveniens.* Aharoni correctly argues that "discretion should be freely exercised in favor of [a] stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice. involving the same issues and the same parties." [FN32] However, a stay in favor of the Cayman Islands action is inappropriate because that case does not involve the same parties or cause of action and that court may not be able to do complete justice for lack of personal jurisdiction over Aharoni.

> FN32. *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g. Co.,* 263 A.2d 281, 283 (Del.1970).

Aharoni is not a party to the Cayman Islands action as required by *McWane.* [FN33] He argues that since his alleged proxy companies are defendants there, his interests are adequately represented as well. Even if so, this argument entirely misses the point of director liability for breach of fiduciary duty. If Actrade's factual allegations are true, Aharoni is personally liable for breach of fiduciary duty, regardless of whether the proxy companies are liable. [FN34] Personal liability is especially important here because the Cayman Islands courts apparently do not have personal jurisdiction over Aharoni. Thus, if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00507-JJF-MPT    Document 11-2    Filed 09/12/2006    Page 8 of 21

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
(Cite as: 2003 WL 22389891 (Del.Ch.))

Page 7

Aharoni removed the funds from the accounts of the proxy companies, Actrade would be left without an equitable remedy. Such a result is not the "prompt and complete justice" contemplated by *McWane*. [FN35]

> FN33. *Id.*

> FN34. *See e.g, Technicorp.*

> FN35. 263 A.2d at 283 (granting a stay because another action could afford the parties "all the discovery, pretrial, and trial advantages" they would have in Delaware and could grant a "speedy, just and complete disposition to the claims" of all parties before the court).

The court also rejects Aharoni's contention that ICC, Fort, CFI, and various Actrade subsidiaries are indispensable parties without whom this court cannot do full and complete justice. Court of Chancery Rule 19(a) lists the factors making a party necessary:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Aharoni argues that Fort, ICC and CFI are indispensable parties because they have a claim to the disputed $31.6 million. This does not affect this court's ability to grant complete relief to the parties before it. The central claim here is that Aharoni breached his fiduciary duty to Actrade by stealing from Actrade Commerce. If Actrade is able to prove this claim, Aharoni will be personally liable for the $31.6 million he allegedly stole, whether or not some other person or entity might also be liable to Actrade.

There is also little risk that these companies will be unable to protect their interests or that Aharoni will be subject to duplicative obligations. If, as alleged, Aharoni controls ICC, Fort and CFI, then Aharoni can adequately defend their interests. If not, this case will only decide whether the disputed transfers were within the scope of Aharoni's authority as a director of Actrade. The alleged proxy companies' liability will not be at issue. The "one satisfaction" rule

ensures that Actrade can actually recover the $31.6 million only once, regardless of the number of actions or defendants. [FN36] Since ICC, Fort, and CFI are not necessary parties under Rule 19(a), it is unnecessary for the court to consider Aharoni's Rule 19(b) analysis.

> FN36. See 47 Am.Jur.2d, *Judgments* § 1009.

**\*8** Similarly, the other Actrade subsidiaries are not necessary parties to this action because the "one satisfaction" rule prevents duplicative recovery and because those subsidiaries are not otherwise interested. [FN37] Aharoni offers no legitimate reason why this case cannot go forward without these unrelated parties. [FN38]

> FN37. *Id.*

> FN38. Aharoni offers no basis for his contention that any court would force him to pay the same $31.6 million multiple times to each Actrade subsidiary. Nor does Aharoni show why this case requires joining Actrade International or Actrade S.A. when those companies had nothing to do with the disputed transfers. While Aharoni may have transferred money from Actrade Resources to Actrade Commerce prior to the disputed transfers, that act appears to have been within Aharoni's director authority and is unchallenged by Actrade. Aharoni suggests his discovery will be hampered without the subsidiary companies, but it is unclear why any information about the disputed transfers, especially payment on the loan agreements, would be outside the control of Actrade DE, owner of all the companies at issue.
>
> Finally, Aharoni worries that he will win here, be able to dismiss Actrade DE and Actrade Commerce from the Cayman Islands action, then be found liable to the other Actrade subsidiaries. This argument is wholly without merit since Aharoni is not a party to the Cayman Islands action and denies he controls the companies that are parties to that action.

Finally, the court will deny Aharoni's motion to the extent it seeks dismissal of the claims for misappropriation, [FN39] fraud [FN40] and waste [FN41] asserted in the complaint. Similarly, the court will deny the motion to strike references to the letter from the SEC and the subpoena from the U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 8
Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573
**(Cite as: 2003 WL 22389891 (Del.Ch.))**

Attorney's office. These allegations tend to prove a core element of Actrade's case: that Aharoni created the loan documents after the fact to hide his wrongdoing. Actrade alleges that Aharoni knew that Actrade was under government investigation and still refused to produce the allegedly exonerating loan agreements for several weeks. If true, this fact would tend to prove bad faith and is relevant. [FN42] The probative value of such evidence far outweighs any danger of unfair prejudice to Aharoni. [FN43]

FN39. The motion to dismiss Actrade's conversion claim is premature. Neither party briefed the issue of whether Antiguan law recognizes a claim for conversion of a specific sum. Since the parties agree that Antiguan law controls, dismissal is inappropriate.

FN40. According to Aharoni, "[n]owhere in their entire complaint do Plaintiffs allege that they were damaged from purported incorrect information contained in the financials." Def. Rep. Br. at 30. However, ¶ 97 of the complaint reads, "Aharoni's representations of fact contained in the purported loan agreements were false when made, were known to be false when made, and were made for purpose of inducing Actrade Commerce to rely on them to their detriment, which Actrade Commerce did." Further, ¶ 98 reads, "[a]s a direct result, Actrade Commerce suffered damages in an amount to be proved at trial." This is an adequate allegation of damage.

FN41. In support of his motion to dismiss the waste claim, Aharoni argues that the loan agreements on their face are evidence that Actrade received reasonable consideration. Of course, the complaint alleges facts that cast doubt on the regularity of those documents. Aharoni's argument that this court is helpless to look beyond the four corners of an allegedly fraudulent document to address allegations of self-dealing waste (Def.Rep.Br. p. 31) is simply wrong.

FN42. Delaware Uniform Rule of Evidence 401 (defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable").

FN43. In passing, the court notes that the parties vigorously argue over remedies that might be available, including accounting, sequestration of stock, and constructive trusts. This discussion is premature and unnecessary to the present motion and I decline to make any ruling on it.

VI.

For all of the foregoing reasons, Aharoni's motion to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and *forum non conveniens* is denied. Aharoni's motion to stay or dismiss this action in favor of the Cayman Islands action is denied. Aharoni's motion to dismiss for failure to state a claim and for failure to join necessary parties is denied. Aharoni's motion to strike is denied. IT IS SO ORDERED.

Not Reported in A.2d, 2003 WL 22389891 (Del.Ch.), 29 Del. J. Corp. L. 573

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)
**(Cite as: 2005 WL 3277911 (Del.Ch.))**

Page 1

## C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Chancery of Delaware.
Michel RAPOPORT, William A. Marquard, Thomas
R. Wall, IV, and Robert A. Young,
III, Plaintiffs,
v.
THE LITIGATION TRUST OF MDIP INC., a
Delaware express trust, and Stephen S.
Gray, Julie Dien Ledoux and Carol McDonald, in
their capacity as trustees for
the Litigation Trust of MDIP Inc., Defendants.
**No. Civ.A. 1035-N.**

Submitted Aug. 9, 2005.
Decided Nov. 23, 2005.

Eric M. Davis, Paul J. Lockwood, Davis Lee Wright,
Skadden, Arps, Slate, Meagher & Flom LLP,
Wilmington, Delaware; Robert E. Zimet, Susan L.
Saltzstein, Skadden Arps, Slate, Meagher & Flom
LLP, New York, New York, for Plaintiffs.

Michael F. Bonkowski, Saul Ewing LLP,
Wilmington, Delaware; Howard B. Levi, Richard F.
Lubarsky, Levi Lubarsky & Feigenbaum LLP, New
York, New York, for Defendants.

### MEMORANDUM OPINION

PARSONS, Vice Chancellor.

**\*1** Before the Court are a motion to enjoin the
prosecution of an allegedly later filed action in Ohio
and a motion to dismiss or stay this action in favor of
the Ohio action. The parties' dispute concerns the pre-
bankruptcy filing conduct of certain directors of the
former Mosler, Inc. ("Mosler") and is one dispute
among several arising out of Mosler's bankruptcy. For
the reasons stated in this memorandum opinion,
the Court concludes that the two actions were, for
purposes of these motions, simultaneously filed and
declines to stay this action on *forum non conveniens*
grounds.

### I. BACKGROUND [FN1]

[FN1]. The facts are taken from the pleadings,
the affidavit of Paul J. Lockwood
("Lockwood Aff."), attached to Plaintiffs'
Opening Brief ("POB"), the affidavit of
Richard F. Lubarsky ("Lubarsky Aff.),
attached to Defendants' Opening Brief
("DOB"), the reply affidavit of Lockwood
("Lockwood Reply Aff."), attached to
Plaintiffs' Reply Brief ("PRB"), the affidavit
of Davis Lee Wright, attached to PRB, and
the reply affidavit of Lubarsky ("Lubarsky
Reply Aff."), attached to Defendants' Reply
Brief ("DRB"). The majority of the facts
pertinent to the pending motions are
undisputed; where the parties do dispute a
fact, it is so noted.

#### A. The Parties

Plaintiffs Michael Rapoport ("Rapoport"), William
A. Marquard, Thomas R. Wall, IV, and Robert A.
Young (collectively the "Directors") were directors of
Mosler from at least 1996 until and including August
6, 2001. [FN2] During this time, Rapoport was also
Chief Executive Officer of Mosler. [FN3]

> FN2. Lockwood Aff. ¶ 2; *see also* Lubarsky
> Aff. ¶ 3 (Directors were directors of Mosler
> from 1995 to 2001).

FN3. Lubarsky Aff. ¶ 3.

Mosler was a Delaware corporation headquartered in
Ohio. [FN4] It filed a voluntary petition under
Chapter 11 of the U.S. Bankruptcy Code in the
District of Delaware on August 6, 2001. [FN5] On
August 17, 2001, Mosler sold substantially all of its
assets to a third party. [FN6]

> FN4. *Id.* ¶ 5.

> FN5. *Id.* ¶ 4; Lockwood Aff. ¶ 3.

FN6. Lockwood Aff. ¶ 4.

The Litigation Trust of MDIP Inc. (the "Trust"), a
defendant in this action, was created pursuant to
Mosler's Second Amended Joint Plan of Liquidation
(the "Liquidation Plan"). [FN7] The Liquidation Plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)
(Cite as: 2005 WL 3277911 (Del.Ch.))

Page 2

assigned any and all of Mosler's potential claims to the Trust.

> FN7. *Id.* ¶ 7; Lubarsky Aff. ¶ 8.

Defendants Stephen S. Gray, Julie Dien Ledoux and Carol McDonald (collectively the "Trustees") are trustees of the Trust. They have been sued only in their capacity as trustees.

### B. The District of Delaware Action

In August 2003, the Trust sued the Directors for breach of fiduciary duties in the U.S. District Court for the District of Delaware (the "District of Delaware Action"). [FN8] All parties actively litigated the case and trial was scheduled to begin on June 6, 2005. [FN9] In January 2005, the Directors filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). [FN10] On May 25, 2005, the district court dismissed the District of Delaware Action for lack of subject matter jurisdiction. [FN11]

> FN8. Lockwood Aff. ¶ 8; Lubarsky Aff. ¶ 9. *See also Litig. Trust of MDIP, Inc. v. Rapoport,* 2004 WL 3101575 (D.Del. Nov. 29, 2004) (denying defendants' motion to dismiss for failure to state a claim).

> FN9. Lubarsky Aff. ¶ 10; *see also* Lockwood Aff. ¶¶ 13-15.

> FN10. Lockwood Aff. ¶ 10.

> FN11. *Litig. Trust of MDIP, Inc. v. Rapoport,* 2005 WL 1242157, at *4 & n. 5 (D.Del. May 29, 2005) (assuming without deciding that the relevant citizenships for purposes of diversity jurisdiction were those of the creditor-beneficiaries of the Trust and finding that neither the citizenships of the creditor-beneficiaries nor those of the Trustees were completely diverse from the citizenships of the Directors).

### C. The Chancery Action

The day after the Directors moved to dismiss the District of Delaware Action, they filed suit against the Trust in this Court seeking a declaratory judgment that they "did not breach their fiduciary duties as directors or officers of Mosler" (the "Chancery Action"). [FN12] The Directors and the Trust agreed to stay the Chancery Action until the Directors terminated the stay. [FN13] On May 10, 2005, the Directors filed an Amended Complaint in

this action that added the Trustees as defendants. [FN14] On May 25--the same day the district court dismissed the District of Delaware Action--counsel for the Directors terminated the stay and so notified counsel for the Trust. [FN15]

> FN12. Compl. at 7; Lockwood Aff. ¶ 11.

> FN13. Lockwood Aff. ¶ 12; Lubarsky Aff. ¶ 19.

> FN14. Am. Compl. at 1; Lockwood Aff. ¶ 16; Lubarsky Aff. ¶ 18.

> FN15. Lockwood Aff. ¶ 19; Lubarsky Aff. ¶ 20.

### D. The Ohio Action

**\*2** The very next day, the Trust sued the Directors in the Ohio Court of Common Pleas alleging the same breaches of fiduciary duties that it had alleged in the District of Delaware Action (the "Ohio Action"). [FN16]

> FN16. Lubarsky Aff. ¶ 21 ("The Ohio Action involves the same parties and fiduciary duty claims as in the [District of Delaware Action]."); Lockwood Aff. Ex. C (Ohio Action Complaint). The only difference between the parties to the Ohio Action and the Chancery Action is that the Directors named the Trustees of the Trust in addition to the Trust as defendants in the Chancery Action.

### E. The Pending Motions

On June 3, 2005, the Directors moved to enjoin the Trust and Trustees [FN17] from prosecuting the Ohio Action on the ground that the Chancery Action was the first filed action. [FN18] On June 8, the Trust moved to dismiss or stay the Chancery Action on the ground that, under Delaware law, the Ohio Action was filed first. [FN19] The Court heard argument on both motions on August 9, 2005. Per the Court's request, the Directors and the Trust submitted supplemental letter briefs addressing the applicability of *HFTP Investments, L.L.C. v. Ariad Pharmaceuticals, Inc.* [FN20] in these circumstances . [FN21]

> FN17. For purposes of the pending motions, the Trust and Trustees are indistinguishable. As such, they will be referred to collectively as the "Trust."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN18. POB at 7.

FN19. DOB at 9-10.

FN20. 752 A.2d 115 (Del. Ch.1999).

FN21. Letter from Paul J. Lockwood, Esq. to the Court (Aug. 30, 2005) ("Lockwood Letter"); Letter from Richard F. Lubarsky, Esq. to the Court (Aug. 30, 2005) ("Lubarsky Letter").

## II. ANALYSIS
### A. Legal Framework
The granting of a stay rests within the sound discretion of the trial court. [FN22] The threshold issue when deciding whether to stay an action in this Court in favor of an action pending elsewhere is which action was filed first. If the action in this Court is the first-filed action, "our courts will uphold a plaintiff's choice of forum except in the rare case where that choice imposes overwhelming hardship on the defendant." [FN23] If the foreign action is the first-filed action, "principles of fairness, comity, judicial economy and the possibility of inconsistent results generally favor the granting of a stay." [FN24] If the actions were contemporaneously filed, our courts will evaluate a motion for a stay "under the traditional *forum non conveniens* framework without regard to a *McWane*-type preference of one action over the other." [FN25]

> FN22. *Adirondack GP, Inc. v. Am. Power Corp.,* 1996 WL 684376, at * 6 (Del. Ch. Nov. 13, 1996) (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281 (Del.1970)).

> FN23. *United Phosphorus, Ltd. v. Micro-Flo, LLC,* 808 A.2d 761, 764 (Del.2002).

> FN24. *Kurtin v. KRE, LLC,* 2005 WL 1200188, at *3 (Del. Ch. May 16, 2005) (internal citation omitted); Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 5-1 (2005) [hereinafter *Wolfe & Pittenger* ] ("Under the so-called first-filed rule, a Delaware court typically will defer to a first-filed action in another forum and will stay Delaware litigation pending adjudication of the same or similar issues in the competing forum.").

> FN25. *Wolfe & Pittenger* § 5-1[a] (citing

cases); *HFTP Invs.,* 752 A.2d at 122 (holding that where two actions are simultaneously filed, the question for the Court is "towards which of the two competing fora do the *forum non conveniens* factors preponderate?") (citing *New Castle County v. Acierno,* 1995 WL 694426 (Del. Ch. Oct. 19, 1995)).

The determination of which action was filed first is a question of fact determined by reference to the underlying procedural facts. [FN26] The Court, however, does not make that determination mechanically or using a bright-line test. [FN27] Rather, this Court's complementary objectives of discouraging both forum shopping [FN28] and contrived races to the courthouse [FN29] require a more nuanced analysis.

> FN26. *Azurix Corp. v. Synagro Techs., Inc.,* 2000 WL 193117, at *3 (Del. Ch. Feb. 3, 2000); *Kingsland Holdings Inc. v. Bracco,* 1997 WL 55954, at *1 (Del. Ch. Feb. 4, 1997).

> FN27. *Dura Pharms., Inc. v. Scandipharm, Inc.,* 713 A.2d 925, 928 (Del. Ch.1998); *In re IBP, Inc. S'holders Litig.,* 2001 WL 406292, at *7 (Del. Ch. Apr. 18, 2001) ("[T]he *McWane* doctrine does not denude a trial court of all discretion simply based on the fact that there are situations where actions should be considered to have been filed contemporaneously.").

> FN28. *Kurtin,* 2005 WL 1200188, at *7 ("Delaware courts have long discouraged forum shopping.") (internal citation omitted); *see also United Phosphorus,* 808 A.2d at 764 (noting that both *forum non conveniens* standards discourage forum shopping).

> FN29. *Azurix,* 2000 WL 193117, at *3 (noting "Court's desire to avoid rewarding the winner of a race to the courthouse.") (citing *Tex. Instruments, Inc. v. Cyrix Corp.,* 1994 WL 96983, at *3--4 (Del. Ch. Mar. 22, 1994)).

### B. *United Phosphorus* Does Not Control
The Trust argues that this case is on all fours with *United Phosphorus.* [FN30] In that case, the plaintiffs filed an action in the District Court for the District of Delaware alleging state and federal claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)
**(Cite as: 2005 WL 3277911 (Del.Ch.))**

(the "Federal Action"). [FN31] The defendant moved to dismiss for failure to state a federal cause of action. While that motion was under consideration, the defendant filed an action in state court in Georgia asserting claims very similar to those asserted by the plaintiffs in Delaware (the "Georgia Action"). [FN32] The district court eventually granted the defendant's motion to dismiss and the U.S. Court of Appeals for the Third Circuit affirmed. [FN33] The plaintiffs then filed an action in the Delaware Superior Court (the "Superior Court Action") that repeated "all of the factual allegations and all of the state law claims" from the original Federal Action. [FN34] Soon thereafter, the defendant moved to dismiss or stay the Superior Court Action in favor of its first-in-time Georgia Action. The Superior Court granted that motion under the *McWane* first-filed rule. [FN35]

> FN30. DOB at 12; DRB at 2--4.

> FN31. *United Phosphorus,* 808 A.2d at 763.

> FN32. *Id.*

> FN33. *Id. United Phosphorous Ltd. v. Micro-Flo LLC,* 276 F.3d 582 (Table) (3d Cir.2001).

> FN34. *United Phosphorus,* 808 A.2d at 763.

> FN35. *United Phosphorus, Ltd. v. Micro-Flo, LLC,* 797 A.2d 1208, 1213-16 (Del.Super.2001) ("The first-filed doctrine, as set forth in [*McWane* ], holds that the Court has the discretion to stay or dismiss an action pending before it when there 'is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues." '), *rev'd,* 808 A.2d 761 (Del.2002).

**\*3** The Delaware Supreme Court reversed, concluding that, "to give effect to the policies guiding our *forum non conveniens* holdings, the [Superior Court Action] must be considered the first filed." [FN36] The Supreme Court reasoned that, for *forum non conveniens* purposes, "the two salient facts are that: 1) [United Phosphorous] did not voluntarily abandon its first choice of forum, and 2) when forced to refile in State court, [United Phosphorous] repeated the exact same state law claims as it raised in its original federal complaint." [FN37] The Supreme Court then observed that United

Phosphorous chose to litigate in Delaware and held that the Superior Court Action "is a continuation of the viable claims from the Federal Action." [FN38] As such, the Court remanded the case to the Superior Court for a determination of whether the defendant could satisfy the heavy burden of establishing overwhelming hardship to overcome the plaintiffs' choice of forum in the first-filed action. [FN39]

> FN36. *United Phosphorous,* 808 A.2d at 764.

> FN37. *Id.* at 765.

> FN38. *Id.*

> FN39. *Id.*

The Trust argues that, "[a]s in *United Phosphorous,* in this case: (1) the Trust originally sued in a federal court and asserted state law claims, (2) the state law claims were dismissed for lack of subject matter jurisdiction; and (3) the Trust refiled the state law claims in a state court." [FN40] Accordingly, the Trust concludes, the Court should deem the Ohio Action a continuation of the District of Delaware Action and thus the first-filed action for purposes of the pending motions. [FN41]

> FN40. DRB at 2.

> FN41. *Id.*

The Trust's argument elides a key aspect of the *United Phosphorous* decision. There, as here, the plaintiff originally "chose to litigate in Delaware." [FN42] When the Federal Action was dismissed in *United Phosphorous,* however, the plaintiff, unlike the Trust, refiled *in Delaware state court.* "In short," wrote the Supreme Court, the plaintiff "is pursuing its original plan to litigate in Delaware and [the defendant who filed in Georgia] is forum shopping." [FN43] *United Phosphorous* thus does not stand for the proposition that a plaintiff whose state law claims are dismissed from federal court may choose to refile in any state court with jurisdiction over the parties and effectively receive the benefit of the earlier filing date of the federal action. Where, as here, the plaintiff in a federal action refiles the state law claims in a state court of a state other than where the federal court is located, *United Phosphorous* does not control. [FN44]

> FN42. *United Phosphorous,* 808 A.2d at 765.

FN43. *Id.*

FN44. The Trust's citations to *Kurtin* and *W.C. McQuaide, Inc. v. McQuaide,* 2005 WL 1288523 (Del. Ch. May 24, 2005), DOB at 14, do not save its argument. In both *Kurtin* and *McQuaide,* this court cited *United Phosphorous,* in dicta, in a review of Delaware case law addressing motions to stay or dismiss. *See Kurtin,* 2005 WL 1200188, at * 4 ("Where the substance of the original case remains unchanged, however, the courts have viewed the filing of intervening suits *in other jurisdictions* as forum shopping and have maintained the case's first-filed status.") (emphasis added) (citing *United Phosphorous,* 808 A.2d at 765); *McQuaide,* 2005 WL 1288523, at *4 (same).

The Trust also makes much of the meaning of "forum." In some contexts, it may well mean, as the Trust argues, "a particular court, tribunal or judicial body." [FN45] And, Delaware courts generally do respect a plaintiff's choice of forum. [FN46] For purposes of determining whether *United Phosphorous* controls here, however, the meaning of forum urged by the Trust is not persuasive. The *United Phosphorous* decision turned on the geographical aspect of forum selection: the plaintiff "chose to litigate in Delaware" and then "pursu[ed] its original plan to litigate in Delaware." [FN47]

FN45. DRB at 3.

FN46. *Wolfe & Pittenger* § 5-1 (*"McWane* and its progeny establish a strong preference for the litigation of a dispute in the forum in which the first action relating to such dispute is filed.") (citing cases).

FN47. *United Phosphorous,* 808 A.2d at 765.

*4 Further distinguishing the situation in this case from that of *United Phosphorous* is the Trust's blatant forum shopping in search of a jury trial. [FN48] In *United Phosphorous,* it was the defendant who was forum shopping. [FN49] Here, it is the Trust, by abandoning its initial choice of Delaware after the parties had fully prepared the case for trial here.

FN48. *See* DOB at 18-19 (describing desire for a jury trial); DRB at 4 (same).

FN49. *United Phosphorous,* 808 A.2d at 765.

### C. The Chancery Action and the Ohio Action Should be Treated as Contemporaneously Filed

The Court's conclusion that *United Phosphorous* does not control this case does not end the first-filed inquiry because the Directors are unquestionably forum shopping, too. It is a long-established general rule that "a party should not be permitted to defeat its adversary's choice of forum by commencing litigation involving the same cause of action in another jurisdiction of its own choosing." [FN50] The Chancery and Ohio Actions admittedly involve the same parties and the same claims. [FN51] The Directors filing of the Chancery Action was an attempt not so much to defeat its adversary's choice of forum as to preempt them from abandoning their initial choice and filing a new suit in a different state. In other words, the Directors raced to this courthouse--while the District of Delaware Action was pending--to secure first-filed status for the Chancery Action in the event its motion to dismiss succeeded. While this is not a classical race to the courthouse, where opposing parties file within hours, if not minutes, of each other, [FN52] it is a race nonetheless. The Directors had no other reason to file the Chancery Action while the District of Delaware Action was pending. In such races, this court has not hesitated to treat the cases as contemporaneously filed. [FN53]

FN50. *Kurtin,* 2005 WL 1200188, at *4 (citing *Dura Pharm.,* 713 A.2d at 928); *McQuaide,* 2005 WL 1288523, at *4 (citing *McWane,* 263 A.2d at 283).

FN51. Lockwood Aff. ¶ 20 ("The Ohio Action is essentially a mirror image of [the Chancery Action]."); Lubarsky Letter ¶ 4 ("The two competing actions are 'mirror-image' cases in that one (the Ohio Action) asserts the Trust's substantive claims for damages, whereas the other (the Chancery Action) asserts only claims for declaratory relief arising out of the Trust's claims.").

FN52. *See, e.g., In re IBP,* 2001 WL 406292 (treating complaints-filed five hours apart as if they had been filed contemporaneously).

FN53. *Wolfe & Pittenger* § 5-1[a] n. 19 (citing cases).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

It is also well known that this Court takes a rather dim view of "tactical maneuvers and improper manipulation of the litigation process by parties who seek to invoke the principles of comity and efficiency underlying the *McWane* doctrine." [FN54] It is unlikely that the Directors had any intention of prosecuting the Chancery Action unless the District of Delaware Action was dismissed . [FN55] Rather, it is more likely that the filing of the Chancery Action was a tactical maneuver designed to confer first-filed status on the Directors. The Court will neither reward the winner of a race to the courthouse nor the manipulator of the litigation process by affording them first-filed status and imposing the accompanying heavy burden on the opposing party to defeat their choice of forum. Therefore, the Court will not treat the Chancery Action as first-filed, [FN56] but rather concludes that, under the present circumstances, the Chancery Action and the Ohio Action should be considered contemporaneously filed. [FN57]

> FN54. *Id.* at text accompanying n. 38. Although parties often engage in these maneuvers in an attempt to have a Delaware action stayed, the Court will not take a brighter view of them when they are aimed at staying a foreign action.

> FN55. *See* Lockwood Aff. ¶ 12 (describing agreement "to extend time for Trust to answer, move, or otherwise respond to the complaint in [the Chancery Action]" entered into shortly after the Directors filed the Chancery Action); Lubarsky Aff. ¶ 19 ("Other than that agreement, there was no activity in the Chancery Action for nearly three months, from its filing on January 20 until the Directors served their amended complaint on May 10.").

> FN56. The Trust's argument that the Chancery Action should be "disregarded" for purposes of determining which action was first filed because it is a declaratory judgment action, DOB at 11, is without support in the case law. *See Williams Gas Supply Co. v. Apache Corp.,* 594 A.2d 34, 36 (Del.1991) (affirming Superior Court decision that, notwithstanding its language, accorded first-filed status to a declaratory judgment action); *but see In re Delta & Pine Land Co. S'holders Litig.,* 2000 WL 1010584, at *5 (Del. Ch. July 17, 2000) (declining, in dicta, to accord first filed

status to a later-filed cross claim for declaratory judgment). Rather, Delaware courts engage in a "more discerning analysis" of the relevant *forum non conveniens* factors where the first-filed action seeks a declaratory judgment. *Wolfe & Pittenger* § 5-1[a]. Where, as here, the Directors' decision to file a declaratory judgment action was "merely strategic [and] not inequitable," *Am. Legacy Found. v. Lorillard Tobacco Co.,* 2002 WL 927383, at *4 (Del. Ch. Apr. 29, 2002), and "justice may be had without hardship to any party," *id.,* this Court will not "disregard" the Chancery Action.

> FN57. The Trust's filing of the Ohio Action immediately after the dismissal of the District of Delaware Action supports treating it and the Chancery Action as contemporaneously filed. The Trust refiled as soon as it knew it needed to. Conversely, the Directors had no need to file their action until after the dismissal of the District of Delaware Action. The fact that they filed the Chancery Action earlier is inconsequential, as evidenced by the Directors' voluntary agreement to stay that action.

### D. The *Forum Non Conveniens* Factors Preponderate Towards Delaware

Since the Chancery and Ohio Actions "must be considered contemporaneously filed, neither action commands the high ground which would otherwise force the court to approach the analysis in a manner which defers to a plaintiff's choice of forum." [FN58] The Court therefore will employ a traditional *forum non conveniens* analysis. [FN59] Six factors are relevant for purposes of this analysis: (1) the applicability of Delaware law; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the possibility of a view of the premises; (5) the pendency or nonpendency of a similar action in another jurisdiction; and (6) all other practical considerations that would make the trial easy, expeditious and inexpensive. [FN60] In balancing these factors, the Court focuses on which forum would be the more "easy, expeditious, and inexpensive in which to litigate." [FN61] This approach leads to the following burden of persuasion for purposes of the motion to stay: "towards which of the two competing fora do the *forum non conveniens* factors preponderate?" [FN62] The resolution of this question rests within the discretion of the trial court, "to be determined in light of all the facts and

circumstances and in the interest of the expeditious and economic administration of justice. [FN63]

> FN58. *Azurix Corp.,* 2000 WL 193117, at *4; *see also HFTP Invs.,* 752 A.2d at 122 (holding that where two actions were contemporaneously filed, the Court will decide a motion to stay "without giving deference to either party's choice of forum.").

> FN59. *Azurix Corp.,* 2000 WL 193117, at *4.

> FN60. *Wolfe & Pittenger* § § 5-1, 5-2 & n. 9 (noting that the Delaware courts have grafted the sixth factor to the five factors enunciated by the Delaware Supreme Court in *Gen. Foods Corp. v. Cryo-Maid, Inc.,* 198 A.2d 681, 684 (Del.1964), *overruled on other grounds, Pepsico, Inc. v. Pepsi-Cola Bottling Co.,* 261 A.2d 520 (Del.1969)); *Azurix Corp.,* 2000 WL 193117, at *4; *HFTP Invs.,* 752 A.2d at 122-23.

> FN61. *HFTP Invs.,* 752 A.2d at 122.

> FN62. *Id.; see also Azurix Corp.,* 2000 WL 193117, at *4 (holding that moving party must demonstrate "on balance" that *forum non conveniens* factors warrant a stay). For the Chancery Action to be *dismissed,* the Trust "would have to demonstrate that it would suffer undue, overwhelming or significant hardship if it is required to litigate in Delaware." *Id.* at *4.

> FN63. *Wolfe & Pittenger* § 5-2; *Apple Computer, Inc. v. Exponential Tech., Inc.,* 1999 WL 39547, at *14 & n. 61 (Del. Ch. Jan. 21, 1999) (noting significant discretion afforded the trial court in deciding motion to stay).

1. The applicability of Delaware law

**\*5** Delaware law unquestionably governs this dispute. The Directors seek a declaratory judgment that they did not breach the fiduciary duties they owed Mosler or, alternatively, a declaration that Mosler's 102(b)(7) provision precludes the recovery of money damages for any breach(es) they may have committed. [FN64] Mosler was a Delaware corporation. [FN65] "It is now well-established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal

affairs." [FN66] A corporation's internal affairs include "those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders." [FN67] The fiduciary duties owed by directors and officers to the corporation unquestionably pertain to the relationships among the corporation and its officers and directors. Therefore, Delaware law governs this dispute.

> FN64. Am. Compl. ¶ ¶ 13, 14, 18.

> FN65. Lockwood Aff. Ex. A ¶ 6 ("At all relevant times, Mosler was a Delaware corporation....").

> FN66. *VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108, 1113 (Del.2005) (citing *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 89-93 (1987)).

> FN67. *Id.*

Although the applicability of Delaware law is not conclusive in every *forum non conveniens* analysis, [FN68] "actions raising novel and substantial issues of Delaware corporate law are best resolved in Delaware courts." [FN69] This action will likely raise at least one novel issue of Delaware corporate law: whether directors and officers' duties change materially in the face of "deepening insolvency." [FN70] This action also raises "substantial issues" of Delaware corporate law. Indeed, the liability or lack thereof of the Directors will turn on their compliance with their duties of good faith and loyalty, as elucidated by the Delaware courts. Such questions of substantive Delaware corporate law "are more properly decided here rather than another jurisdiction, even though the other jurisdiction's courts are quite capable of applying Delaware law and rendering prompt justice." [FN71] Further, the Delaware Supreme Court has observed, albeit in another context, that "Delaware has a substantial interest in defining, regulating and enforcing the fiduciary obligations which directors of Delaware corporations owe to such corporations and the shareholders who elected them." [FN72]

> FN68. *Wolfe & Pittenger* § 5-2[a] (citing cases).

> FN69. *In re Chambers Dev. Co. S'holders Litig.,* 1993 WL 179335, at *3 (Del. Ch. May 20, 1993) (internal citation omitted).

FN70. *See* Am. Compl. Ex. A ¶ 3 (Trust alleging in District of Delaware Action that Directors "[r]ecklessly failed to appropriately respond to the company's deepening insolvency"). *See* Donald F. Parsons, Jr., V.C., Del. Ct. of Ch., Recent Developments in the Wonderful World of Fiduciary Duties from *Disney* to the Zone of Insolvency, Address at the SMU Corporate Counsel Symposium (Oct. 28, 2005) (manuscript on file with the SMU Law Review) (observing that the question of whether directors and officers duties change in the zone of insolvency is a "relatively new and uncharted issue"). For a thorough exposition of whether directors owe any special duties in the zone of insolvency, *see Prod. Res. Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772, 787-92 (Del. Ch.2004).

FN71. *In re Walt Disney Co. Derivative Litig.,* 1997 WL 118402, at *3 (Del. Ch. Mar. 13, 1997).

FN72. *Armstrong v. Pomerance,* 423 A.2d 174, 180 n. 8 (Del.1980) (internal quotation omitted).

The Court therefore concludes that the applicability of Delaware law weighs heavily in favor of this forum.

2. The relative ease of access to proof
Mosler's headquarters were located in Hamilton, Ohio. [FN73] Some marginal inconvenience thus normally would arise if documents had to be brought to Delaware. [FN74] The parties, however, were ready to go to trial in Delaware in the District of Delaware Action less than two weeks after that case was dismissed. [FN75] The Court therefore accepts the Directors' assertion that most of the relevant documents were already in Delaware and, if the Court stays this action, would have to be moved to Ohio. [FN76] In any event, the potential inconvenience of having to transport documents is slight because, as then Vice Chancellor, now Chief Justice Steele observed, "[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant." [FN77]

FN73. Lubarsky Aff. ¶ 5.

FN74. *HFTP Invs.,* 752 A.2d at 123 ("Because ARIAD has its principal place of

business in Massachusetts, it will bear some marginal inconvenience in producing documents in either New York or Delaware.").

FN75. Lubarsky Aff. ¶¶ 15-16; PRB at 15. The New Castle County Courthouse is located just a few blocks away from the federal courthouse in Wilmington, Delaware.

FN76. POB at 12; PRB at 15.

FN77. *Asten v. Wangner,* 1997 WL 634330, at *3 (Del. Ch. Oct. 3, 1997).

**\*6** Similarly, modern methods of transportation lessen the Court's concern about the travel of witnesses who live neither in Delaware nor Ohio. Sixteen of the nineteen witnesses identified by the Trust in the District of Delaware Action do not reside in Delaware or Ohio and, in fact, are scattered around the country. [FN78] In addition, two of the additional, "important fact witnesses" identified by the Trust in briefing the pending motions reside in Texas and Kentucky. [FN79] Thus, among the witnesses identified by the Trust in the District of Delaware Action and in briefing the pending motions, only five of 23 reside in Ohio, while none reside in Delaware. The five Ohio witnesses will suffer some inconvenience if they ultimately are called to Delaware to testify, but where, as here, "there is no single forum or locality in which the bulk of witnesses ... is located ... the location of witnesses ... [does] not weigh in favor of one forum or the other." [FN80]

FN78. Lockwood Reply Aff. Ex. B (attaching Trust's List of Witnesses from the District of Delaware Action).

FN79. Davis Aff. ¶¶ 5, 8.

FN80. *Wolfe & Pittenger* § 5-2[b].

In sum, (1) the majority of relevant documents are likely located in Delaware, and, if they are not, can be moved here with only marginal inconvenience; (2) several witnesses are located in Ohio; and (3) the majority of the witnesses are scattered around the country. Accordingly, this factor is neutral. It neither favors nor disfavors this forum.

3. The availability of compulsory process for witnesses

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)
(Cite as: 2005 WL 3277911 (Del.Ch.))

For this factor to favor the Trust, it must have identified the witnesses and "the specific substance of their testimony." [FN81] Further, for this factor to be relevant, the other forum should "provide a substantial improvement as to the number of witnesses who would be subject to compulsory process." [FN82] Of the nineteen non-party witnesses identified by the Trust, five live in Ohio. [FN83] Ohio thus provides some improvement over Delaware in terms of the number of witnesses subject to compulsory process. Because the Trust failed to identify the relative importance of its various witnesses or what they would testify to, the Court cannot determine how much of an improvement Ohio would be over Delaware. One fact relevant to that issue is the Trust's declared intention to bring the five Ohio witnesses to Delaware to appear in its chosen forum until the Federal Action was dismissed. Indeed, the Trust's readiness to proceed to trial as the plaintiff in the District of Delaware Action suggests that the improvement would not be substantial.

> FN81. *Id.* § 5-2[c].

> FN82. *Id.*

> FN83. The Trust identified nineteen potential witnesses in the District of Delaware Action, but four of them are the defendant Directors. Lockwood Reply Aff. Ex. B. The Trust identified four additional witnesses in briefing the pending motions, Lubarsky Aff. ¶ 27, for a total of nineteen potential nonparty witnesses.

Where, as here, "potential witnesses are located in numerous jurisdictions, so that no single forum has a distinct advantage in terms of the availability of compulsory process, such circumstance will militate against a stay or dismissal absent a specific showing of hardship by the defendant." [FN84] Again, the Trust has made no such showing. In addition, to the extent the nonparty witnesses are fact witnesses, the Trust could obtain their testimony by deposition . [FN85]

> FN84. *Wolfe & Pittenger* § 5-2[c].

> FN85. *HFTP Invs.*, 752 A.2d at 123.

Accordingly, the availability of compulsory process favors Ohio, but only very slightly.

4. The possibility of a view of the premises
*7 The parties have presented no evidence that this

factor is relevant. As such, it neither favors nor disfavors this forum.

5. The pendency or nonpendency of a similar action in another jurisdiction
The Chancery and Ohio Actions are mirror images of each other. [FN86] Moreover, there is no reason to believe that the Ohio court cannot fully adjudicate the parties' dispute and provide full, final and complete relief.

> FN86. *See supra* n. 51.

There is also no evidence that if this Court declined to stay this action, then it and the Ohio Action would be on a collision course. Neither the Trust nor the Directors have "taken any steps to advance the progress of the Ohio Action." [FN87] Further, there is no evidence that the Ohio court has a particular or strong interest in resolving this dispute, as opposed to having it proceed in this Court. [FN88]

> FN87. Letter from Richard F. Lubarsky, Esq. to the Court ¶ 4 (Oct. 6, 2005). In the PRB, the Directors assert that "counsel for the Trust has advised the Directors that the Trust will proceed in Ohio absent an injunction." PRB at 18. Absent any direct evidence of the Trust's intentions, the Court will not presume that the Trust will take actions that could put this action and the Ohio Action on a collision course.

> FN88. The parties have represented to this Court that the "Notice of Report" sent by the Ohio court appears to have been "generated by the Ohio Court in the ordinary course." Letter from Richard F. Lubarsky, Esq. to the Court ¶ 4 (Oct. 6, 2005).

"Since [the Chancery Action] does not differ significantly from the [Ohio Action] nor can this Court provide relief that the [Ohio] court cannot," [FN89] this factor is neutral. It neither favors nor disfavors this forum.

> FN89. *Azurix*, 2000 WL 193117, at *6.

6. All other practical considerations
The Trust argues that both Mosler's historic significant contacts with Ohio and the present location of "dozens of unsecured creditors of Mosler on whose behalf this action has been brought" in Ohio give Ohio a stronger interest in resolving this controversy than Delaware. [FN90] Although

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)
(Cite as: 2005 WL 3277911 (Del.Ch.))

Delaware courts occasionally have considered such contacts in the context of a *forum non conveniens* analysis, [FN91] the Court finds the Trust's argument significantly undercut by its original decision to litigate this dispute in Delaware. That decision, and the Trust's failure to explain why these contacts with Ohio have become any more significant now in the wake of the dismissal of the District of Delaware Action, cause the Court to conclude that the Trust's contacts argument deserves little weight.

FN90. DRB at 8-9.

FN91. *Wolfe & Pittenger* § 5-2[f].

Further, the Court notes that Mosler's past incorporation in Delaware weighs slightly in favor of litigation here. Delaware has an interest in opening its courts to Delaware entities, like Mosler was and the Trust is, in order to provide a forum in which they may seek justice. [FN92] This is especially so where the dispute between the parties involves the internal affairs of a Delaware corporation.

FN92. *Id.*

The Trust also argues that the possibility of a jury trial in the Ohio Action weighs in favor of that forum. This Court, however, consistently has rejected such pleas. [FN93] As noted by Chief Justice Steele, it is likely that "our Delaware corporate citizens often find it advantageous to be based in a state where business disputes can be resolved without a jury trial...." [FN94]

> FN93. *Id.; Asten,* 1997 WL 634330, at *3 ("I can find no Delaware case that says that our non-jury Court of Chancery should yield dispute resolution between its Delaware corporate citizens to jury trials in other jurisdictions."); *Azurix,* 2000 WL 193117, at *7 ("[T]he parties relative taste for lay resolution of their purely commercial dispute[ ] is not relevant to my decision.").

FN94. *Asten,* 1997 WL 634330, at *3.

Finally, the Court will consider the motives of the parties in filing their respective actions. [FN95] In this situation, both parties clearly are forum shopping. The Trust is forum shopping based on its preference for a jury trial; the Directors are forum shopping in that they presumably would prefer to keep this case in Delaware, where the Trust originally filed it, and to take advantage of this Court's

familiarity with Delaware corporate law and nonjury trials. The motives of the parties tip the scales slightly in favor of the Directors because "this is not a case where [they] ha[ve] chosen a forum solely to inconvenience the defendant." [FN96] Rather, Delaware was Mosler's state of incorporation, this dispute is governed by Delaware law, and, perhaps most importantly, the Trust initially brought suit and prosecuted its case until it was trial-ready in Delaware.

> FN95. *See Wolfe & Pittenger* § 5-2[f] (noting Delaware courts consideration of the motives of each party).

> FN96. *Leach v. Solar Bldg. Sys., Inc.,* 1999 WL 252386, at *3 (Del. Ch. Apr. 8, 1999).

**\*8** Accordingly, this last, catch-all factor weighs slightly in favor of Delaware.

Taking all of the relevant *forum non conveniens* factors into account, the Court concludes, in the exercise of its discretion, that they preponderate towards Delaware. Therefore, the Trust's motion to dismiss or stay this action in favor of the Ohio Action will be denied.

### E. Injunction

It is well-settled that this Court "is empowered to enjoin a party to an action from removing the subject of the controversy to a foreign jurisdiction by filing a later action or proceeding in a foreign forum." [FN97] It is equally well-settled, however, that the exercise of such authority "is discretionary in nature and should be exercised cautiously." [FN98] A sense of comity owed to the courts of other states drives this caution. [FN99]

> FN97. *Ivanhoe Partners v. Newmont Mining Corp.,* 1988 WL 34526, at *3 (Del. Ch. Apr. 7, 1988) (internal citations omitted).

> FN98. *Wolfe & Pittenger* § 5-3 (citing cases); *Household Int'l, Inc. v. Eljer Indus., Inc.,* 1993 WL 133065, at *2 (Del. Ch. Apr. 22, 1993) ("I do not read *ANR v. Shell* as holding that the Court of Chancery is obligated in each case to enjoin prosecution of a later filed suit between the same parties whenever it determines that a first filed suit in Chancery should not be stayed.").

> FN99. *See Household Int'l, Inc. v. Eljer Indus., Inc.,* 1995 WL 405741, at *1 ("In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

both instances [where the plaintiff sought to enjoin the defendant from prosecuting a later-filed action] the denial of the injunction was premised upon a sense of comity owed to the courts of the State of Texas...."); *Wolfe & Pittenger* § 5-3 ("[R]ecent case law tends to reflect this cautious approach by giving a great deal of weight to considerations of comity.").

Where the courts of Delaware have issued injunctions in aid of jurisdiction, they have done so in favor of a first-filed Delaware action. [FN100] In fact, the Court has found no case enjoining the prosecution of a contemporaneously filed action in another jurisdiction. This Court's sense of comity towards the courts of other states would seem to counsel against such an injunction, especially where, as here, the court in the Ohio Action has yet to address whether it should stay its hand in favor of this action. As former Chancellor Allen observed, the better practice is to rely upon the comity of sister state courts to respect the judgment of this Court that this controversy ought to be heard in Delaware. [FN101]

> FN100. *See, e.g., Household Int'l,* 1995 WL 405741, at *3 (enjoining prosecution of later-filed Texas suit); *Air Prods. & Chems., Inc. v. Lummus Co.,* 235 A.2d 274, 278 (Del. Ch.1967) (enjoining defendant from bringing suit in Puerto Rico when a suit between the same parties concerning the same controversy was pending in the Delaware Superior Court); *Williams Natural Gas Co. v. BHP Petroleum Co.,* 574 A.2d 264 (Table) (Del.1990) (enjoining prosecution of later-filed suit between the same parties concerning the same controversy).

> FN101. *Household Int'l,* 1993 WL 133065, at *2 ("I confess my preference is to issue such an injunction only on rare occasions. It would seem to me the better practice to rely upon the comity of sister state courts to respect the judgment that has now been made concerning the feasibility of litigating these claims in the first filed jurisdiction.").

In declining to grant an injunction in favor of its jurisdiction, the Court has proceeded with the understanding that a collision with the Ohio Action is not imminent. No action has been taken with respect to the Ohio Action and it remains to be seen whether

the Trust will challenge, in the Ohio Action, the decision of this Court to hear this controversy. [FN102] If the circumstances change, and a collision course seems unavoidable, this Court would entertain a renewed motion to enjoin the Trust from proceeding with the Ohio Action. [FN103]

> FN102. *See supra* at II.D.5.

> FN103. *See Household Int'l,* 1995 WL 405741, at *3 (enjoining prosecution of later-filed suit in Texas after Texas court declined to stay prosecution of later-filed suit); *Williams Natural Gas Co.,* 574 A.2d 264 (enjoining parties from proceeding with a later-filed action to avoid a "collision course").

### III. CONCLUSION

For the reasons stated, the Trust's motion to stay or dismiss this action is DENIED, and the Directors' motion to enjoin the prosecution of the Ohio Action also is DENIED.

IT IS SO ORDERED.

Not Reported in A.2d, 2005 WL 3277911 (Del.Ch.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 356337 (Trial Pleading) Complaint for Declaratory Relief (Jan. 21, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, John M. Seaman, hereby certify that on September 12, 2006, I served a true and correct copy of the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Forum Non Conveniens* on the following in the manner indicated below:

### By CM/ECF and U.S. Mail

Richard R. Weir, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WEIR, JR., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806
Telephone: (302) 888-3222

BOUCHARD MARGULES & FRIEDLANDER, P.A.
David J. Margules (#2254)
Dominick T. Gattuso (#3630)
John M. Seaman (#3868)
222 Delaware Ave, Suite 1400
Wilmington, DE 19801
Telephone: (302) 573-3500
abouchard@bmf-law.com
jseaman@bmf-law.com